**Licia T. M. CARDINALE, Appellant,**

v.

**WASHINGTON TECHNICAL INSTITUTE et al.**

**No. 73–1672.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 22, 1974.

Decided June 25, 1974.

8. Formerly Rule 9(h).

Richard J. Medalie, Washington, D. C., for appellant.

Leo N. Gorman, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief for appellee.

Before FAHY, Senior Circuit Judge, and McGOWAN and WILKEY, Circuit Judges.

McGOWAN, Circuit Judge.

The only question presented by this appeal is whether appellant's complaint sufficed to invoke the jurisdiction of the United States District Court. Finding that it did, we reverse.

## I

Appellant was a nontenured teacher at the Washington Technical Institute, a District of Columbia institution of higher learning. In May of 1970, she was given notice that the Institution proposed to end her employment in order to accommodate a reduction in the work force necessitated by financial stringencies. The termination date was subsequently extended in order to provide two weeks notice, and her employment ceased on June 15, 1970. At no point, appellant alleges, was she given a hearing or a formal statement of reasons why she, rather than persons of lesser seniority, was selected for termination.

Following unsuccessful negotiations for reinstatement, appellant filed suit in the District Court, asserting that her dismissal violated Section 1 of the Civil Rights Act, 42 U.S.C. § 1983, as well as rights guaranteed to her by the First and Fifth Amendments. Jurisdiction was invoked under 28 U.S.C. §§ 1331 and 1343. Additionally, appellant asserted two claims based on breach of contract and allegedly falling within the court's ancillary jurisdiction.

The Supreme Court's subsequent decision in District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), made it clear that appellant could not maintain an action founded upon Section 1983, as to which 28 U.S.C. § 1343 is the jurisdictional counterpart. She continued, however, to pursue her constitutional and contractual claims. Thereafter, on defendant's motion, the District Court certified the case to the Superior Court of the District of Columbia under 11 D.C.Code § 922(b).

Except for certain exceptions not pertinent to this case, Section 501 of Title 11 of the D.C.Code invests the District Court with a general jurisdiction over civil matters with an amount in controversy exceeding $50,000. The life of that jurisdictional grant is expressly limited to a thirty-month period following the effective date of the District of Columbia Court Reorganization Act of 1970. Likewise, Section 922(b) of Title

11 grants the District Court the power to certify actions to the Superior Court during that same transitional period if it appears to the court's satisfaction that the case will not justify a judgment in excess of $50,000, *and* "the action does not otherwise invoke the jurisdiction of the court." 11 D.C.Code § 922(b). The basic purpose of Section 922(b) is, thus, to enable the District Court to certify cases to the Superior Court upon a determination that the plaintiff has improperly attempted to invoke the District Court's general jurisdiction, and that no independent head of federal jurisdiction exists.

In the instant case, the District Court found itself lacking in general jurisdiction for want of the requisite jurisdictional amount; and it concluded that there was no basis for invocation of its purely federal jurisdiction. Appellant *does not now challenge the former finding,* and the sole question on appeal is whether the complaint states a claim sufficient to invest the District Court with jurisdiction under 28 U.S.C. § 1331.[1]

## II

Appellant maintains that the recent Supreme Court decisions in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), *clearly indicate that her complaint is responsive to 28 U.S.C. § 1331.* Like the instant case, both *Roth* and *Sindermann* presented procedural due process challenges to refusals by public educational institutions to rehire nontenured faculty members. In each case the plaintiff-teachers alleged, as did appellant in the instant case, that the nonrenewal of their teaching contracts without prior provision of a statement of reasons or an opportunity for a pre-termination hearing violated their rights of procedural due process under the United States Constitution.

Both *Roth* and *Sindermann* arose as appeals from district court grants of motions for summary judgment against the respondent teachers. In *Roth, supra,* at 577, 92 S.Ct. at 2709, Justice Stewart summarized the salient constitutional principle for determining who might properly bring a challenge based on deprivation of property interests without procedural due process of law:

Certain attributes of "property" interests protected by procedural due process emerge . . . . To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right of a hearing to provide an opportunity for a person to vindicate those claims.

Applying this principle, the Court held that the district court had properly granted summary judgment in *Roth* but that the teacher in *Sindermann* had alleged a legitimate claim of entitlement to continued employment sufficient to enable him to survive a motion for summary judgment.

In both cases the Court looked to the complainant's asserted contractual rights, and to the general policies and understandings existing at the respective institutions, in order to determine whether the claims of entitlement to continued employment were legitimate. In *Roth*, the Court concluded that the terms of the appointment in issue, and the statutes and regulations governing it, did not provide any basis for a legitimate expectancy of continued employment, since they clearly indicated that the employment was only for one year

---

1. While the District Court found that the controversy would not support a verdict in excess of $50,000, it made no finding in relation to the $10,000 jurisdictional amount of

28 U.S.C. § 1331. This statute endows the District Court with jurisdiction of civil actions arising under "the Constitution, laws, or treaties of the United States."

and that any determination to rehire was left "to the unfettered discretion of university officials." *Roth, supra*, at 567, 92 S.Ct. at 2704.

As in *Roth*, the complainant in *Sindermann* lacked formal contractual or tenure security in continued employment. That fact alone was not dispositive, however, for there had been alleged the existence of binding understandings fostered by the college administration which had led the complainant and other nontenured faculty members legitimately to anticipate continued employment. The Court ruled that these allegations were such as to preclude summary judgment, and that the complainant was entitled to try to establish the legitimacy of his expectancy and thereby lay the foundation for his claim of deprivation of procedural due process.

The *Sindermann* allegations were that (1) a provision that had been in the college's official guide for many years offered a form of *de facto* tenure on which the complainant and other members of the faculty had relied, and (2) guidelines promulgated by the coordinating board of the state college and university system also gave rise to a legitimate expectancy in some form of job tenure. These allegations, in the opinion of the Court, distinguished Sindermann's case from that of Roth, for these allegations appeared to suggest the existence of "such rules or mutually explicit understandings that support his claim of entitlement to the benefit" and thereby give rise to a claim under the Constitution to the protections of procedural due process. *Sindermann, supra,* 408 U.S. at 601, 92 S.Ct. at 2699. Sindermann's allegations, if proven, would "obligate college officials to grant a hearing at his request, where he could be informed of the grounds for his nonretention and challenge their sufficiency." *Id.* at 408 U.S. 603, 92 S.Ct. at 2700.

As the District Court recognized in the case before us, appellant's amended claims for relief set forth allegations quite similar to those held to survive an adverse motion for summary judgment in *Sindermann*. Appellant alleged that one provision of the Washington Technical Institute's official statement entitled *Policies,* which had been adopted by the WTI Board and circulated to all WTI teachers and academic staff, provided that "[f]or purposes of retention of employment in the event of a reduction in the size of the budget appropriations, actions that result in a reduction of faculty, seniority shall be institute-wide," and that, in any event, any faculty member in his field who is less senior than he is . . . ." Plaintiff's Amended Complaint, ¶¶ 26 and 29; JA at 19. Moreover, appellant alleged that another section of the same WTI *Policies* defined "faculty" to include instructors and Development Advisors. *Id.* ¶ 28.

Appellant, who was hired as an instructor and later promoted to the position of Development Advisor, claimed to be first in seniority among those in the social science field, and generally to have seniority on an institute-wide basis over all other faculty members who had commenced employment after April 8, 1969. *Id.* ¶¶ 11, 12, 13, and 30; JA at 16, 19. Additionally, appellant alleged that another section of the same WTI *Policies* provided that probationary faculty members should be afforded notice of a decision to terminate employment no later than March 1, and that failure to provide such notice by that date would entitle the probationary faculty member to employment for an additional year. *Id.* ¶ 32; JA at 20. Appellant finally alleged that she had justifiably relied on these various representations, and that her termination without provision of written reasons and a pre-termination hearing deprived her of a property interest without due process of law.[2]

2. It is interesting to note that the Institute's Board modified these sections of the *Policies,* apparently to insure that a case similar to appellant's will not recur. The new section reads:

‘ Should a reduction in staff become necessary due to a cut-back in funds, by the granting agency, the Washington Technical Institute, as the sponsor, shall extend a two week notice of intent to terminate to

These unchallenged allegations, which under *Sindermann* would appear to establish a sufficiently meritorious foundation for a claim of deprivation of procedural due process to survive an adverse motion for summary judgment, obviously set forth a claim that "arises under the Constitution . . . of the United States." 28 U.S.C. § 1331(a). Thus, unless the District Court properly determines that one of two narrow exceptions is applicable, jurisdiction has attached and it must proceed to the merits. Bell v. Hood, 327 U.S. 678, 681–682, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

As the Court noted in Bell v. Hood, *id.* at 682–683, 66 S.Ct. at 776, cases which appear to invoke federal jurisdiction "may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Examination of appellant's complaint reveals that neither of these exceptions applies to the instant case.

To the extent that the District Court's determination to certify the case to the Superior Court reflected a view that the constitutional issue set forth in appellant's complaint is insubstantial or frivolous, it represents a misapprehension of the court's role in a motion to dismiss for want of jurisdiction. While the substantiality doctrine is a recognized principle affecting the power of a federal court to adjudicate federal issues, its role is characterized by the Supreme Court as a limited one. *See* Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) and cases cited therein.[3] Given *Sindermann* appellant's complaint can hardly be characterized as insubstantial or frivolous. Indeed, it would appear that this complaint would satisfy even the more rigorous view of substantiality posed by the dissenters in *Hagans. See id.* at 552, 94 S.Ct. 1372 at 1387 (Rehnquist, J., dissenting).

Nor do we agree with the District Court's view that this complaint falls within the other jurisdictional exception mentioned in Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946), namely, that the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction." The constitutional claim in this

---

each staff member affected by a reduction in force. The Institute assumes no obligation for providing employment for Special/Grant Projects staff affected by a reduction in force.
Exhibit 15, JA at 50. The Institute also amended the section relating to seniority to state that its provisions were "not extended to persons employed in Special/Grant Projects." *Id.*, JA at 51.

3. The Court in *Hagans* offered the following review of the substantiality doctrine as it affects the jurisdictional power of a district court to entertain a case :
The principle applied by the Court of Appeals—that a "substantial" question was necessary to support jurisdiction—was unexceptionable under prior cases. Over the years the Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are "so attenuated and unsubstantial as to be absolutely devoid of merit," Newburyport Water Co. v. Newburyport, 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904) ; "wholly insubstantial," Bailey v. Patterson, 369 U.S. 31,

33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962) ; "obviously frivolous," Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 54 L.Ed. 482 (1910) ; "plainly insubstantial," Levering & G. Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062 (1933) ; or "no longer open to discussion," McGilvra v. Ross, 215 U.S. 70, 80, 30 S.Ct. 27, 54 L.Ed. 95 (1909). One of the principal decisions on the subject, Ex parte Poresky, 290 U.S. 30, 31–32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933), held, first, that "[i]n the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question be presented" ; second, that a three-judge court was not necessary to pass upon this initial question of jurisdiction ; and third, that "[t]he question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' " [Citations omitted]

case can hardly be said to be immaterial. Rather, it is intimately related to the nonfederal claims. Neither can the due process claim be said to have been made solely for the purpose of obtaining jurisdiction. It is conceivable that appellant might prevail on this claim and nonetheless lose on the claims based on breach of contract. We see nothing in the pleadings that would suggest that appellant is any less interested in her federal claim than in her local ones.[4]

Finally, to the extent that the District Court's decision to certify the case to Superior Court might reflect a doubt whether the complaint states a claim on which monetary relief can be granted, it fails to recognize that this is a determination that is made on the merits. Bell v. Hood, *supra*, at 682, 66 S.Ct. 773. The certification statute speaks only in jurisdictional terms. Any doubt as to the propriety of relief is therefore not a proper ground for certification of a case to the Superior Court.[5]

## III

The District Court was obviously concerned that the resolution of the federal issue presented by this case requires an examination of the legitimacy of appellant's assertion of an expectancy of continued employment—a matter that appears to turn on questions of local law. We share that concern, but 11 D.C.Code § 922(b) is not an appropriate vehicle for the resolution of this problem.

■ It is by no means unique that the legitimacy of appellant's assertion of a property interest, the foundation for her procedural due process claim, depends on questions of local, rather than federal, law. That was also the case in *Sindermann* and *Roth*. See *Roth, supra,* at 578, 92 S.Ct. 2701; *Sindermann, supra,* at 603, 92 S.Ct. 2694 (Burger, C. J.,

4. We note that appellant's complaint was initiated in 1971. It asserted both 28 U.S.C. §§ 1331 and 1343 as jurisdictional bases, and also set forth contract claims assertedly cognizable under the court's ancillary jurisdiction. At that time it was perfectly reasonable to assume that jurisdiction could attach under both federal sections. Indeed, this court subsequently found Section 1983 and the jurisdictional counterpart, 18 U.S.C. § 1343, applicable to the District of Columbia in Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), and that remained the law of this circuit until overruled in 1973 by the United States Supreme Court. District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). In view of appellant's reasonable expectation that jurisdiction would attach under Section 1343, her claim under Section 1331 cannot fairly be characterized as made solely for the purpose of obtaining jurisdiction.

The Supreme Court recently dealt with a somewhat analogous situation in City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). That case began as an action brought under Section 1983 and 28 U.S.C. § 1343 to challenge a municipal license revocation on the basis of an alleged deprivation of procedural due process. After finding that the municipal corporation was not a "person" under Section 1983 and thus that jurisdiction could not be maintained under Section 1343, the Court re-

manded for consideration of the possible existence of jurisdiction under Section 1331. Moreover, careful examination of the opinion suggests that the only factor causing the Court even to question whether jurisdiction might be found under Section 1331 was whether the case could be found to support the requisite jurisdictional amount. City of Kenosha, *supra* at 514, 93 S.Ct. 602; see also *id.* at 516, 93 S.Ct. 602; (Brennan, J., concurring).

5. Appellant additionally invites this court to rule that her allegations state a claim under the Fifth Amendment for which money damages can be granted. Pointing out that Bivins v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), answered affirmatively the question left open in Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773 (1946), of whether Fourth Amendment violations perpetrated by agents acting under the color of authority gives rise to a federal cause of action for damages, appellant urges that we now decide that violations of the Fifth Amendment right of procedural due process likewise set forth a federal cause of action for money damages. We decline this invitation. As noted above, this is a question that goes to the merits of the case, not to the federal court's jurisdiction. As such, it is not relevant to an interpretation of 11 D.C.Code § 922(b).

concurring). However, this fact has no significance to the question of the existence *vel non* of subject matter jurisdiction. It rather poses one of the difficult questions inherent in the notion of pendent jurisdiction.

Federal courts have long been troubled with the notion that local issues, injected into a federal case only through an assertion of pendent jurisdiction, often become the controlling questions of the case. In many instances the local issue must be considered preliminarily as a means of attempting to avoid a constitutional question. This results in the federal courts being called upon to resolve local questions that might more happily be left to the local courts. While this remains a problem throughout the federal system, the Supreme Court's pronouncement in *Hagans* indicates that the general approach should be to favor the resolution of local claims whenever that practice will avoid confrontation of constitutional issues. *Hagans, supra,* at 546, 94 S.Ct. 1372 at 1383.[6]

The doctrine of abstention might perhaps serve to resolve the conflicting values presented by this case. As Chief Justice Burger indicated in concurrence to *Sindermann* and *Roth, Sindermann, supra* at 603–604, 92 S.Ct. 2694, a close

interrelationship between the federal procedural due process claim and the underlying local claims may in some cases suggest that the federal court should abstain from deciding the question of constitutional entitlement to notice and a prior hearing pending action by the plaintiff to seek resolution of the local issues in the local forum.

On the record as it now stands, we are unable to determine whether abstention would be appropriate in this case. The question of certification was the first and only issue addressed by the District Court, and appellees have not yet filed an answer to appellant's complaint. Thus any determination of the certainty or uncertainty of the underlying question of appellant's legitimate expectancy —a basic prerequisite to a decision on abstention, *see, e.g., Sindermann, supra,* at 604, 92 S.Ct. 2694 (Burger, C. J., concurring); Procunier v. Martinez, 416 U. S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (April 30, 1974)—would be ill-advised at the appellate level. Additionally, the District Court might take into consideration other factors, such as the time that has already elapsed in this litigation and the additional delay attendant upon a decision to abstain. *Cf.* Harman v. Forssenius, 380 U.S. 528, 537, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Hostetter

6. Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (March 26, 1974), while not precisely in point, is illustrative of the problem presented in this case. There the Court considered a case in which a complaint joined an equal protection challenge brought under 28 U.S.C. § 1343, a statute for which there is no required jurisdictional amount, with a claim based on the Supremacy Clause brought under 28 U.S.C. § 1331, which requires that the amount in controversy exceed $10,000. By combining the two and asserting the Supremacy Clause as pendent to the equal protection challenge, petitioners in that case were able to litigate the former in the District Court, even though the jurisdictional amount required by Section 1331 would otherwise have precluded federal litigation of the Supremacy Clause claim. Thus, Section 1343 became a vehicle for consideration of a pendent claim that would not otherwise have been litigable in the federal forum, much in the same manner that a

state claim might be appended to a federal claim properly brought under Section 1331. Chief Justice Burger and Justices Powell and Rehnquist proposed that the District Court, confronted with a case in which the pendent claim was obviously attached to a weak claim in order to found federal jurisdiction over the former, should dismiss the pendent claim without prejudice to its renewal in another forum and proceed directly to the other matter. *Hagans, supra,* at 522, 94 S.Ct. 1372. (Rehnquist, J., dissenting).

Two observations serve to show why that procedure would not be proper in this case. First, Justice Rehnquist's proposal was advanced in a context in which he considered the independently cognizable federal claim to be a very weak one at best. Appellant's procedural due process claim, as we have demonstrated previously, cannot be so characterized. Second, Justice Rehnquist's proposed solution was a minority view.

v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964). In any event, the question is not now before this court, and we intimate no view as to how it should be resolved if it arises on remand.

The District Court's order certifying the case to the Superior Court is reversed, and the case is remanded to the District Court for further proceedings consistent herewith.

It is so ordered.