**Tony MARK, Plaintiff-Appellant,**

v.

**Paul GROFF et al., Defendants-Appellees.**

No. 73–3362.

United States Court of Appeals, Ninth Circuit.

Sept. 2, 1975.

Herbert E. Selwyn (argued), Los Angeles, Cal., for plaintiff-appellant.

Joseph M. McManus, Atty. (argued), Tax Div., Dept. of Justice, Washington, D. C., for defendants-appellees.

## OPINION

Before WRIGHT and CHOY, Circuit Judges, and SOLOMON,* District Judge.

CHOY, Circuit Judge:

Mark appeals from dismissal of his complaint against three Internal Revenue Service (I.R.S.) agents for alleged violation of his constitutional rights. We reverse.

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Appellees do not raise the issue whether the complaint states a cause of action for damages under the fifth, sixth and eighth amendments,

*Facts*

Mark (appellant), a tax accountant, claimed that the I.R.S. agents (appellees) maliciously, intentionally and wantonly took certain actions to ruin his tax return preparation business and to cause him extreme anguish and emotional distress. According to the complaint's allegations, which we must accept as true for purposes of this appeal, the agents beginning in 1970 made false and derogatory statements to Mark's clients, unlawfully arrested appellant, and made false representations to a United States magistrate causing a high bond to be set; further, after Mark was acquitted of criminal charges for violation of tax laws, appellees arranged to audit substantially all the returns prepared by Mark for his clients, told clients not to use Mark's services and warned the clients that if they continued to patronize Mark their returns would be audited. As a result of the agents' actions, appellant suffered an $80,000.00 loss in income in 1973, and his tax return business was effectively destroyed.

Mark's action for compensatory damages and injunctive relief was brought under 28 U.S.C. § 1331 and was based on alleged violations of his constitutional rights under the fifth, sixth and eighth amendments. After consideration of affidavits filed by both parties, the district court dismissed the complaint on the ground that the I.R.S. agents were immune from damage suits.

*Jurisdiction*

Mark seeks recovery squarely on grounds of violation of fifth, sixth and eighth amendment rights. Regardless of whether appellant's complaint states a cause of action upon which relief may be granted,[1] the district court has subject

and the district court, dismissing the complaint on grounds of absolute immunity, never decided the matter. Accordingly, we take no position here on whether a damage recovery is available in an action brought directly under the fifth, sixth and eighth amendments or

matter jurisdiction under 28 U.S.C. § 1331. *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Cardinale v. Washington Technical Institute*, 163 U.S.App.D.C. 123, 500 F.2d 791, 795 (1974).

■■■ As for the jurisdiction of this court under 28 U.S.C. § 1291 to consider the appeal, we note that generally a mere dismissal of a complaint without expressly dismissing the action is not an appealable final order. *See Jackson v. Nelson*, 405 F.2d 872 (9th Cir. 1968). We find, however, special circumstances here which permit us to treat the order as final. Not only did the district court dismiss the complaint with prejudice, but also it appears that the ruling on official immunity precludes any possible salvaging of the action by amendments to the complaint. *See Lanning v. Serwold*, 474 F.2d 716, 717 n. 1 (9th Cir. 1973); *Local 179, United Textile Workers of America, AFL–CIO v. Federal Paper Stock Co.*, 461 F.2d 849, 850 (8th Cir. 1972).

### Official Immunity

■■■ The district court dismissed the complaint solely on the ground that the federal officers were absolutely immune from damage claims. Subsequent, however, to the court's decision below and the filing of the appellate briefs here, the Supreme Court handed down an important decision in a § 1983 action which substantially altered federal law on official immunity. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Prior to *Scheuer*, executive officers were granted absolute immunity from damage suits if they were acting within the outer perimeter of their scope of authority and were performing a discretionary as opposed to ministerial act. *Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Green v. James*, 473 F.2d 660, 661 (9th Cir. 1973); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 456 F.2d 1339, 1342–43 (2d Cir. 1972).[2] Under the absolute immunity doctrine, an official is protected from damage liability even though he allegedly acted out of improper motives or with malice.

■■■ *Scheuer*, however, destroyed the notion of absolute immunity for executive officials[3] and held that only

a *qualified* immunity is available to officers of the executive branch of Government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based.

416 U.S. at 247, 94 S.Ct. at 1692 (emphasis added). Under the qualified immunity doctrine, a government officer performing acts in the course of official conduct[4] is insulated from damage suits

whether the particular facts alleged in the complaint state a cause of action under the constitutional amendments. *See Cardinale v. Washington Technical Institute*, 163 U.S.App. D.C. 123, 500 F.2d 791, 796 n. 5 (1974).

2. The purpose of the privilege rule has been clearly stated by the Supreme Court:

It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

*Barr v. Matteo, supra*, 360 U.S. at 571, 79 S.Ct. at 1339.

3. *Scheuer* left intact the absolute immunity doctrine which protects legislators with respect to any speech, debate, vote, report, or action done in session, *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); and protects judges for acts done within the judicial role. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

4. If the officer's actions were not in the course of official conduct, he is not entitled to any qualified immunity or good faith defense. *See Hutchison v. Lake Oswego School Dist. No. 7*, 374 F.Supp. 1056 (D.Or.1974), *aff'd in part*, 519 F.2d 961 (9th Cir. 1975). Thus, the "outer

only if (1) at the time and in light of all the circumstances there existed reasonable grounds for the belief that the action was appropriate *and* (2) the officer acted in good faith. *Id.* at 247–48, 94 S.Ct. 1683.

■ Though recognizing the importance of *Scheuer* with respect to § 1983 suits against state officials, appellees take the position that the *Scheuer* qualified immunity doctrine is applicable *only* in § 1983 actions against state officers and not those brought under § 1331 against federal officers. Appellees, however, offer no significant reason for distinguishing, as far as the immunity doctrine is concerned, between litigation under § 1983 against state officers and actions against federal officers alleging violation of constitutional rights under the general federal question statute. In contrast, the practical advantage of having just *one* federal immunity doctrine for suits arising under federal law is self-evident. Further, the rights at stake in a suit brought directly under the Bill of Rights are no less worthy of full protection than the constitutional and statutory rights protected by § 1983. Accordingly, we agree with several courts of appeals in holding that the official immunity doctrine in suits against federal officers for violation of constitutional rights is identical to the immunity doctrine applied in § 1983 suits. *See Apton*

*v. Wilson*, 165 U.S.App.D.C. 22, 506 F.2d 83, 92–93 (1974) (specifically applying *Scheuer* in suit brought under fourth and fifth amendments); *Rowley v. McMillan*, 502 F.2d 1326, 1335 (4th Cir. 1974) (specifically applying *Scheuer* to suit brought under first and fourth amendments); *States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146, 1159 (4th Cir. 1974) (specifically applying *Scheuer* to suit brought under fifth amendment); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 456 F.2d 1339, 1346–47 (2d Cir. 1972).

■ Applying *Scheuer* to this case, we hold that I.R.S. agents are entitled to no more than a qualified immunity for acts performed in the course of official conduct. A remand for further proceedings is necessary because "the scope of that immunity will necessarily be related to facts as yet not established" below. *Scheuer, supra*, 416 U.S. at 243, 94 S.Ct. at 1689. Final resolution of this question must take into account the functions and responsibilities of these particular agents in their capacities as officers of the federal government, as well as the purposes of the constitutional amendments under which this action was brought. *See id.*

■ The task of determining the scope of appellees' immunity is somewhat simplified by the fact that I.R.S. agents, not unlike law enforcement offi-

---

line of authority" test, recognized in *Barr v. Matteo* for determining when absolute immunity applies, is also relevant to a determination of qualified immunity.

In this case, although the court dismissed the complaint on a 12(b)(6) F.R.Civ.P. motion, it made an initial "finding" that the I.R.S. agents were acting within the outer line of authority when they committed the acts allegedly violative of Mark's constitutional rights. In drawing this important conclusion, the court relied solely on several sections of the Internal Revenue Code which grant the I.R.S. authority to interview a taxpayer, summon and interview his clients in the course of an investigation, and examine the taxpayer's business records. *See* Int.Rev.Code of 1954, §§ 7210, 7602, 7604(b). Although these sections establish as a matter of law the agents' authority to conduct a thorough investigation

and interview witnesses as well as the taxpayer, the district court did not point to, nor could it indicate, any Code section which authorized the agents to tell Mark's clients to cease doing business with him and warn them that if they continued to patronize Mark their returns would be audited. Such strong-arm and threatening tactics have no rightful place in I.R.S. investigations and enforcement proceedings. And on the record in this case, there is insufficient evidence to support a finding that such acts are within the outer line of authority. On remand, the trier of fact must determine whether the actions were taken "palpably beyond authority" or whether the actions had "more or less connection with the general matters committed by law to [their] control or supervision." *Spalding v. Vilas*, 161 U.S. 483, 498, 16 S.Ct. 631, 637, 40 L.Ed. 780 (1896).

cers or narcotic agents, are relatively low-level executive officers. The lower the government official, the narrower the range of official discretion and responsibilities; accordingly, the inquiry into the low-level official's good faith and the existence of reasonable grounds for the belief that the action taken was appropriate is comparatively less complex than in the case of a high executive official like a governor or cabinet member. *See Scheuer, supra*, at 246, 94 S.Ct. 1683.

Reversed and remanded for proceedings consistent with this opinion.