581 F.2d 669
 48 A.L.R.Fed. 576
 Mrs. Marie GREEN, Administratrix of the Estate of Joseph
Jones, Jr. (a/k/a Roscoe Simmons), and next-of-kin
of Joseph Jones, Jr., Plaintiff-Appellant,
v.
Norman A. CARLSON, Director, Federal Bureau of Prisons, et
al., Defendants-Appellees.
 No. 77-1334.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 3, 1977.
Decided Aug. 3, 1978.
 
 Charles Hoffman, Chicago, Ill., for plaintiff-appellant.
 Bradley L. Williams, Asst. U.S. Atty., Indianapolis, Ind., for defendants-appellees.
 Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and GRANT, Senior District Judge.[1]
 SWYGERT, Circuit Judge.
 
 
 1
 The principal issue presented on appeal is whether a claim against federal officials for damages based on alleged constitutional violations resulting in death survives for the benefit of the decedent's estate. In dismissing the complaint for the lack of subject matter jurisdiction, the district court held that survival of this federal claim is governed by the Indiana survival statute. We do not agree and therefore reverse.
 
 
 2
 * To place the issue in context, it is necessary to recite the facts as alleged in the complaint.[2] At the time of his death on August 15, 1975, Joseph Jones, Jr. was a prisoner in the federal penitentiary at Terre Haute, Indiana, serving a ten-year sentence for bank robbery. He had been diagnosed as a chronic asthmatic in 1972 when he entered the federal prison system. In July 1975, the prisoner's asthmatic condition required hospitalization for eight days at St. Anthony's Hospital in Terre Haute. Despite the recommendation of the treating physician at St. Anthony's that he be transferred to a penitentiary in a more favorable climate, Jones was returned to the Terre Haute prison. There he was not given proper medication and did not receive the steroid treatments ordered by the physician at St. Anthony's.
 
 
 3
 On August 15 Jones was admitted to the prison hospital with an asthmatic attack. Although he was in serious condition for some eight hours, no doctor saw him because none was on duty and none was called in. It was further alleged that defendant Dr. Benjamin De Garcia, the chief medical officer directly responsible for the prison medical services, did not provide any emergency procedure for those times when a physician was not present. As time went on Jones became more agitated and his breathing became more difficult. Although Jones' condition was serious, defendant Medical Training Assistant William Walters, a nonlicensed nurse then in charge of the hospital, deserted Jones for a time to dispense medication elsewhere in the hospital. On his return to Jones, Walters brought a respirator and attempted to use it despite the fact that Walters had been notified two weeks earlier that the respirator was broken. After Jones pulled away from the respirator and told Walters that the machine was making his breathing worse, Walters administered two injections of Thorazine, a drug contraindicated for one suffering an asthmatic attack. A half-hour after the second injection Jones suffered a respiratory arrest. Walters and Staff Officer Emmett Barry brought emergency equipment to administer an electric jolt to Jones, but neither man knew how to operate the machine. Jones was then removed to St. Francis Hospital in Terre Haute; upon arrival he was pronounced dead.
 
 
 4
 The plaintiff, Marie Green, filed this action as administratrix of the estate of her deceased son. Her complaint alleged that he died as the result of medical care so inappropriate as to evidence intentional maltreatment, and that the defendants' acts violated the Due Process Clause and the equal protection component of the Fifth Amendment in addition to the Eighth Amendment's prohibition against cruel and unusual punishment. Several officials and employees of the Federal Bureau of Prisons as well as the Joint Commission of Accreditation of Hospitals were named as defendants. Jurisdiction was invoked pursuant to 28 U.S.C. § 1331. Plaintiff asked for $1,500,000 in actual damages and $500,000 in punitive damages.
 
 
 5
 Pursuant to motions filed by the defendants the district court dismissed the complaint for lack of subject matter jurisdiction. The court held that the plaintiff could not satisfy the $10,000 jurisdictional requirement of 28 U.S.C. § 1331 because of the limitations on recoverable damages under the Indiana wrongful death and survival statutes.[3]
 
 
 6
 The trial court recognized that an action for damages may be brought for a violation of a right guaranteed by the Constitution. Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The court further recognized that under the authority of Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), Jones could have maintained this Bivens -type action against the defendants if he had survived the alleged wrongs. The court, however, dismissed plaintiff's complaint because, in its view, survival of Jones' federal claim was governed by state law.[4]
 
 II
 
 7
 The Supreme Court recently addressed the issue of survival of a federal claim in Robertson v. Wegmann, --- U.S. ----, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978). In that case, Clay Shaw filed an action under 42 U.S.C. § 1983 against several defendants for bad faith prosecution. He died several months before the trial was set. After the executor of Shaw's estate was substituted as plaintiff, various defendants moved for dismissal of the action on the ground that the cause abated with Shaw's death. The district court thus had to determine whether the survival of the action was governed by state or federal law.
 
 
 8
 Because the action was brought under section 1983, the trial court referred to 42 U.S.C. § 1988 which provides that when federal law is deficient as to a suitable remedy, the relevant state law shall govern "so far as the same is not inconsistent with the Constitution and laws of the United States."[5] The federal civil rights laws do not provide for survival. Under Louisiana law the action would abate since no person with the requisite relationship to Shaw survived him. Both the district court and the Fifth Circuit held Louisiana law to be inconsistent with the broad remedial purposes of the Civil Rights Acts. They therefore fashioned a federal common law of survival in favor of the estate. The Supreme Court reversed.
 
 
 9
 The Court ruled that questions of inconsistency between state and federal law raised under section 1988 should be resolved by looking not only at the relevant federal statutes and constitutional provisions, but also at the policies expressed in them. The Court recognized two policies underlying a section 1983 cause of action: "(1) compensation of persons injured by deprivation of federal rights and (2) prevention of abuses of power by those acting under color of state law." 98 S.Ct. at 1995. Because of the peculiar facts of the case, the Court found that application of the state survivorship statute would not have an "independent adverse effect" on those policies.[6] The Court also noted that the state survivorship law neither excluded survival of all tort actions nor significantly restricted the types of actions that survive. The Court held the Louisiana statute not inconsistent with the underlying policies of section 1983 and therefore applicable.
 
 
 10
 Because Robertson dealt with a claim under section 1983, the Court was required to apply section 1988 and adopt Louisiana law unless that law was found to be inconsistent with "the Constitution and laws of the United States," that is, the policies underlying the Civil Rights Acts. The Court found no inconsistency. Because the instant action involves a Bivens -type claim, section 1988 has no statutory effect. Nonetheless, because actions brought under the Civil Rights Acts and those of the Bivens -type are conceptually identical and further the same policies, courts have frequently looked to the Civil Rights Acts and their decisional gloss for guidance in filling the gaps left open in Bivens -type actions.[7] Accordingly, an analysis similar to that developed in Robertson should be used in the case at bar.
 
 
 11
 We first note the absence of any applicable federal survivorship rule. Consequently, we turn to "the common law, as modified and changed by the Constitution and statutes of the (forum) State . . . ." Indiana does have a survivorship statute, but its application to this federal claim would leave the plaintiff without a remedy.[8] In determining whether application of Indiana's law is "inconsistent with the Constitution and laws of the United States," we must consider whether application of that law would frustrate the federal policies underlying Bivens. We hold that it would.
 
 
 12
 Bivens recognized the existence of a federal substantive right based directly on the Fourth Amendment and held that the courts have power to create a damage remedy for injuries suffered as a result of the violation of that right by federal officials. Numerous courts have extended the rationale of Bivens to other types of claims.[9] Such an extension should be made discreetly, but when appropriate, courts should do so. The federal policies of compensation and deterrence which underlie section 1983, noted by the Court in Robertson, are equally applicable here. Because Jones, Jr.'s estate is suing, the policy of compensating the injured person would not be thwarted by abatement. It is the second concern, prevention of abuse of power by officials, which distinguishes this case from Robertson. Unlike Shaw, Jones, Jr. is alleged to have died as a Result of the deprivation of his civil rights. In Robertson the Court expressly intimated no view about whether abatement based on state law would be allowed in that situation. We hold that the "inconsistency" which would be created by application of the state law necessitates the creation of a federal common law of survival in a case such as that before us.
 
 
 13
 The question whether a federal action survives was recently considered by this court in Beard v. Robinson, 563 F.2d 331 (7th Cir. 1977). Beard's mother, as administratrix for her son's estate, filed a suit for damages in federal court alleging that a Chicago policeman and several FBI agents had murdered her son. The claim against the policeman was brought under the Civil Rights Acts, 42 U.S.C. §§ 1981 Et seq., while the claim against the FBI agents was brought pursuant to Bivens. Noting that neither the Civil Rights Acts nor the Supreme Court's decision in Bivens addressed the issues of abatement or survival of such actions, this court said that "most courts that have considered the question of the survival of federal civil rights claims have looked to state law, either on the authority of 42 U.S.C. § 1988 or simply because reference to state law obviated the need to fashion an independent federal common law rule." Id. at 333. As to the claim under the Civil Rights Acts, this court, pursuant to the authority of section 1988, borrowed the Illinois Survival Act[10] because that statute was deemed completely consistent with the Constitution and the laws of the United States. As to the plaintiff's Bivens claim we said, "(T)he adoption of state law likewise seems warranted since it is consistent with the federal policies underlying Bivens." Id.
 
 
 14
 The same underlying policies dictate our decision here. It would be anomalous as well as ironic to hold that Jones, Jr. could have sought redress for violation of his constitutional rights had he survived the alleged wrongdoing, but because the wrongdoing caused his death, the law is impotent to provide a remedy to benefit his estate. Such a holding would not only fail to effectuate the policy of allowing complete vindication of constitutional rights; it would subvert that policy. Although the Fifth Circuit in Brazier v. Cherry, 293 F.2d 401 (5th Cir. 1961), was concerned with survival of an action brought under the civil rights statutes (and not a Bivens -type action), Judge Brown's language is apposite:
 
 
 15
 (I)t defies history to conclude that Congress purposely meant to assure the living freedom from such unconstitutional deprivations, but that, with like precision, it meant to withdraw the protection of civil rights statutes against the peril of death. The policy of the law and the legislative aim was certainly to protect the security of life and limb as well as property against these actions. Violent injury that would kill was not less prohibited than violence which would cripple.
 
 
 16
 293 F.2d at 404. Allowing recovery for injury but denying relief for the ultimate injury death would mean that it would be more advantageous for a tortfeasor to kill rather than to injure. Surely this cannot be the intent of the law.
 
 
 17
 The essentiality of the survival of civil rights claims for complete vindication of constitutional rights is buttressed by the need for uniform treatment of those claims, at least when they are against federal officials.[11] As this very case illustrates, uniformity cannot be achieved if courts are limited to applicable state law. Here the relevant Indiana statute would not permit survival of the claim, while in Beard the Illinois statute permitted survival of the Bivens action. The liability of federal agents for violation of constitutional rights should not depend upon where the violation occurred. It should also be noted that because federal prison authorities decide the prison where a prisoner is incarcerated, those authorities in a sense choose the state in which the wrong occurs. This is an additional reason why the survivorship law of the particular state should not cut off recovery. In sum, we hold that whenever the relevant state survival statute would abate a Bivens -type action brought against defendants whose conduct results in death, the federal common law allows survival of the action.
 
 III
 
 18
 The federal defendants challenge the sufficiency of the complaint to state a claim for damages under the Constitution. They contend that plaintiff's allegations merely assert a medical malpractice claim against the individual defendants cognizable in the state courts. We note that state law would apply to a claim of medical malpractice by federal employees. However, if the suit were against the federal government, it would be filed in federal court pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 Et seq., not in state court. United States v. Muniz, 374 U.S. 150, 162, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Of significance also is the fact that the Tort Claims Act only applies to claims for injuries suffered as the result of the negligence of government employees and not for intentional torts, 28 U.S.C. § 2680(h). Plaintiff's claim here alleges serious deprivation of constitutional rights, not mere negligence. As the district court stated, "(G)iven the serious allegations of the complaint herein if Jones were alive today he could properly maintain an action under § 1331 alleging a denial of proper medical treatment. Estelle v. Gamble (429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))." In so ruling the district court could properly consider the plaintiff's allegations that Jones, Jr. was denied medical treatment "so clearly inadequate as to amount to a refusal to provide essential care, so inappropriate as to evidence intentional maltreatment causing death."
 
 
 19
 We agree with the district court's appraisal. In Estelle the Supreme Court recognized that
 
 
 20
 (a)n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," . . . the evils of most immediate concern to the drafters of the (Eighth) Amendment.
 
 
 21
 429 U.S. at 103, 97 S.Ct. at 290. The Court concluded:
 
 
 22
 (D)eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," . . . proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.
 
 
 23
 429 U.S. at 104-05, 97 S.Ct. at 291 (citations omitted). Under the criteria delineated in Estelle, the alleged conduct of the federal defendants rises to the level of constitutional violations.
 
 
 24
 The status of the Joint Commission on Accreditation of Hospitals as well as its exact participation in the alleged events are unclear. Neither the allegations of the complaint nor counsels' arguments are helpful. Because we are left in the dark on this phase of the case, we decline to rule on the issue of whether the Commission should have been dismissed as a defendant under Rule 12(b)(6) of the Federal Rules of Civil Procedure.
 
 IV
 
 25
 Preliminary to dismissing the complaint, the district court dismissed Norman A. Carlson, the Director of the Federal Bureau of Prisons, and Robert T. Brutshe, the Assistant Surgeon General of the United States, on the ground that they had not been personally served by summons as required by Rule 4(d)(1) of the Federal Rules of Civil Procedure. We agree with the plaintiff, in challenging the dismissal, that Rule 4(d)(1) is inapplicable. Carlson and Brutshe, non-inhabitants of the State of Indiana, were served with summons by certified mail in accordance with the provisions of Rule 4(e) and (f). Under those provisions a plaintiff may resort to state procedures for effecting service on non-resident parties, in this case Indiana Trial Rule 4.4 which provides for service by certified mail. Both defendants had contacts with Indiana sufficient to permit use of this provision and to meet the requirements of due process. Carlson, as Director of the Federal Bureau of Prisons, is responsible for the management of the federal prison system. Brutshe, as Assistant Surgeon General of the United States, is responsible for monitoring the medical services at the Terre Haute prison. Accordingly, the service of process upon Carlson and Brutshe by certified mail was proper.
 
 
 26
 The judgment of the district court is reversed except as to the dismissal of defendant C. L. Benson.[12] The cause is remanded for further proceedings.
 
 
 
 [1]
 The Honorable Robert A. Grant, United States Senior District Judge for the Northern District of Indiana, sitting by designation
 
 
 [2]
 Because this is an appeal from the dismissal of the complaint, the allegations must be taken as true
 
 
 [3]
 In dismissing the complaint, the trial judge concluded that the Indiana wrongful death and survival statutes were the "sole mechanisms" by which Mrs. Jones as the personal representative of her son's estate could maintain an action for damages. The judge reasoned:
 The plaintiff obviously is attempting to avoid the limitations on recovery inherent in the statutory remedy and characterizes this as an action "of the Estate of one who was deprived of fundamental human rights suing for justice in the form of money damages." The Court does not believe that such an action exists other than as set out in the wrongful death and survival statutes.
 At common law the plaintiff herein could not have maintained an action such as this on behalf of the decedent's estate since such actions did not generally survive the injured person's death. It is apparent the plaintiff seeks the benefit of the wrongful death statute to provide her with standing to bring this action on behalf of Jones' estate.
 
 
 [4]
 If, as the district court held, the plaintiff were confined to the provisions of the Indiana wrongful death statute, the amount of recovery could not reach the $10,000 requirement of 28 U.S.C. § 1331. That statute, Ind. Code § 34-1-1-2 (Burns ed. 1970), provides that when a person's death is caused by the wrongful act or omission of another, the personal representative of the decedent may maintain an action against the wrongdoer if the injured party might have maintained an action for the wrongful act had he lived. Damages are awarded to the widow, widower, dependent children, or dependent next-of-kin. The statute also provides that if the decedent leaves no such person surviving him, damages are limited to the reasonable value of the hospital, medical and surgical services, funeral expenses, and costs and expenses of administration. Joseph Jones, Jr. left neither widow nor dependent children nor next-of-kin surviving him. Because Jones was in federal prison during this period, the listed items patently could not total $10,000
 It is important, however, to characterize plaintiff's complaint properly. The district court erred in its characterization. The plaintiff is suing neither for deprivation of another's constitutional rights nor on an independent, statutorily created cause of action such as an action for wrongful death. Rather, she is asserting her son's cause of action as the administratrix of his estate.
 
 
 [5]
 42 U.S.C. § 1988 provides:
 The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, So far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause. (emphasis added)
 
 
 [6]
 The goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate. And, given that most Louisiana actions survive the plaintiff's death, the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality, at least in situations in which there is no claim that the illegality caused the plaintiff's death
 
 
 [98]
 S.Ct. at 1996 (footnote omitted)
 
 
 [7]
 See Beard v. Robinson, 563 F.2d 331 (7th Cir. 1977); Paton v. LaPrade, 524 F.2d 862 (3d Cir. 1975); Mark v. Groff, 521 F.2d 1376 (9th Cir. 1975)
 
 
 [8]
 Under the Indiana survival statute, Ind. Code § 34-1-1-1 (Burns ed. 1970), a decedent's personal representative may maintain an action only if the decedent "receive(d) personal injuries caused by the wrongful act or omission of another and thereafter die(d) from causes Other than said personal injuries so received." (emphasis added) Joseph Jones, Jr. died allegedly as a result of the personal injuries caused by the alleged wrongdoing, and not from causes other than those personal injuries. Thus the only cause of action for personal injury permitted to survive under Indiana law encompasses a factual situation different from that alleged in this case
 
 
 [9]
 See Briggs v. Goodwin, 186 U.S.App.D.C. 179, 186, 569 F.2d 10, 17 n. 8 (D.C.Cir.1977), and Jacobson v. Tahoe Regional Planning Agency, 566 F.2d 1353, 1364 n. 23 (9th Cir. 1977), for a listing of cases in which courts either extended Bivens to cover violations of other rights or indicated they would look favorably on such an extension. Several courts have rejected extension, although only in one case was the plaintiff attempting to recover damages from federal officials. See Davidson v. Kane, 337 F.Supp. 922, 925 (E.D.Va.1972) (no extension to Fifth Amendment due process claim)
 
 
 [10]
 The Illinois Survival Act, Ill.Rev.Stat. ch. 3, § 339, provides:
 In addition to the actions which survive by the common law, the following also survive: actions of replevin, actions to recover damages for an injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property, or for the detention or conversion of personal property, actions against officers for misfeasance, malfeasance, or nonfeasance of themselves or their deputies, actions for fraud or deceit, and actions provided in Section 14 of Article VI of "An Act relating to alcoholic liquors," approved January 31, 1934, as amended.
 
 
 [11]
 For a discussion of the desirability of uniformity, See Note, The Federal Common Law, 82 Harv.L.Rev. 1512, 1523-24, 1529-31 (1969). In Robertson the Court rejected this argument in relation to section 1983 claims, 98 S.Ct. at 1997 n. 11, by relying heavily upon congressional guidance through section 1988. However, since that section has no statutory effect on Bivens -type actions, and we find that this is an area of law in which courts must be free to develop federal common law, Robertson's rejection of the desirability of uniformity has no bearing on the case here
 
 
 [12]
 Plaintiff does not raise the issue of the dismissal of defendant Benson, the warden of the Terre Haute prison at the time of Joseph Jones, Jr.'s death. He was not personally served with summons; instead, his successor in office was served by the marshal. Under the circumstances, the dismissal of defendant Benson was proper