Ralph SAGER, Susan J. Sager, and Sheryl Dianne Sager, by and through her next friend and mother, Susan J. Sager, individually, Ralph Sager, and Susan J. Sager, as personal representatives and next friends of Bryan Scott Sager, Deceased, [Plaintiffs],

v.

CITY OF WOODLAND PARK, a Municipal corporation, Larry Iverson, and James William Parr, Jr., [Defendants].

CITY OF WOODLAND PARK, a Municipal corporation, and Larry Iverson, [Third-Party Plaintiffs],

v.

CITY OF COLORADO SPRINGS, a Municipal corporation, [Third-Party Defendant].

No. 81–K–1677.

United States District Court, D. Colorado.

June 30, 1982.

Jeffrey I. Tompkins, Gerald A. Kimble, Jr., Colorado Springs, Colo., for plaintiffs.

J. Andrew Nathan, Denver, Colo., for defendant Parr.

Justin R. Melat, Colorado Springs, Colo., for City of Woodland Park.

J. Stephen Mullen, Leo Rector, Clara Cafaro, City Atty., Colorado Springs, Colo., for City of Colorado Springs.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is a civil rights action pursuant to 42 U.S.C. §§ 1983, 1985(3). This court has jurisdiction pursuant to 28 U.S.C. §§ 1343(3), 1331(a). The plaintiffs are the parents and sister of the deceased-teenager, Bryan Scott Sager. The plaintiffs allege that the defendant, James Parr, Jr., a Woodland Park police officer, while acting in the course of his employment, willfully, maliciously and without provocation or justification, shot and killed the decedent with a shotgun, in violation of the decedent's and plaintiffs' constitutional rights. The plaintiffs further allege that the defendant, Larry Iverson, the chief of police of the City of Woodland Park, and the defendant, City of Woodland Park, also violated the decedent's and plaintiffs' constitutional rights by acting with "gross negligence" and with "deliberate indifference to the safety and lives of citizens" through the implementation of inade-

quate training and supervision policies and procedures that proximately resulted in the decedent's killing. The defendants, Iverson and the City of Woodland Park impleaded the City of Colorado Springs, for indemnification or contribution, alleging that the City of Colorado Springs was specifically responsible for the negligent training and supervision of Woodland Park police officers, including the defendant, James Parr. This court has subject-matter jurisdiction over the third-party claim under the doctrine of pendent jurisdiction. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). This case is now before me on the defendant's motion to dismiss, the plaintiff's motion to strike affirmative defenses and the third-party defendant's motion for summary judgment, pursuant to Rules 12(b)(6), 12(f) and 56, F.R.Civ.P., respectively.

## I. BACKGROUND OF THE LITIGATION

The determination of the proper interaction of the civil rights statutes and state law survival and wrongful death statutes in situations where allegedly unconstitutional conduct causes death, is necessary to the disposition of this action. The parties had requested that I not decide the pending motions until the United States Supreme Court decided a case involving some of

these issues, *Espinoza v. O'Dell*, 633 P.2d 455 (Colo.1981), *cert. dism'd,* —— U.S. ——, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982).

While waiting for the Supreme Court's decision, much has occurred in this action. There has been a complaint, two amended complaints, three sets of answers, three motions to dismiss, a third-party complaint and answer, a motion to strike affirmative defenses, a motion for summary judgment on the third-party claim and extensive briefing in support of and in opposition to all of the motions. The last such brief was filed on June 14, 1982. On May 3, 1982 the Supreme Court dismissed certiorari in *Espinoza*, leaving many of the issues in the instant case unresolved.[1]

In order better to facilitate the disposition of this action and, given the imposing mass of pleadings, briefs, motions and unresolved law, I shall first discuss the law and then apply it to the motions and pleadings before me.

## II. DISCUSSION

42 U.S.C. §§ 1983, 1985(3) and 1988 are remedial reconstruction civil rights statutes, *see United States v. Price*, 383 U.S. 787, 789, 86 S.Ct. 1152, 1154, 16 L.Ed.2d 267 (1966) and were enacted as part of the 1866 and 1870 civil rights acts and the Ku Klux Klan Act of 1871.[2] These statutes provide

---

1. The court dismissed the writ of certiorari for want of jurisdiction on the ground that 28 U.S.C. § 1257 granted it jurisdiction to review only "final judgments" rendered by the highest court of a state, that the Colorado Supreme Court, having remanded the case for trial had not rendered a final decision, and that the case did not fit within any of the limited exceptions in which the court has found finality despite the ordering of further proceedings by the state courts. *Id.* at 238.

2. 42 U.S.C. § 1983 provides

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for

redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1985(3) provides

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United

relief to injured parties as a result of certain civil rights deprivations. These statutes are sadly lacking in detail, however, only sketching the barest parameters of recovery. In this regard, neither 42 U.S.C. §§ 1983 nor 1985(3) describes who the injured parties are when death occurs, the nature of the claims, the types of damages recoverable or the specific source of law to turn to for enlightenment. However, there is no question that congress intended, through these statutes, to deter official lawlessness, to compensate the bereaved families for the then-rampant state and local acts of officially-condoned murder and thereby provide remedies in death cases, as well as in situations involving non-fatal injuries.

For example, President Grant's message to congress specifically referred to losses of life which prompted his request for remedial federal legislation. *See Cong. Globe*, 42d Cong., 1st Sess., p.244. Floor debates on the bill frequently reflected that theme. Senator Lowe of Kansas stated:

> While murder is stalking abroad in disguise, while whipping and lynchings and banishment have been visited upon unoffending American citizens, the local ad-

ministrations have been found inadequate or unwilling to apply the proper correction.

*Id.* at 374.

Similarly, Congressman Butler stated that:

> This then is what we offer to a man whose house has been burned, as a remedy; to the woman whose husband has been murdered, as a remedy; to the children whose father has been killed, as a remedy.

*Id.* at 807.

The general rule in this area, adopted by the circuits and approved by the Supreme Court, is that § 1983 actions survive the plaintiff's death if that would be the result under the applicable state law.[3] *See Moor v. Cty. of Alameda*, 411 U.S. 693, 702–03 n. 14, 93 S.Ct. 1785, 1792 n.14, 36 L.Ed.2d 596 (1973); *Brazier v. Cherry*, 293 F.2d 401 (5th Cir.) *cert. denied*, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961); *see also Duchesne v. Sugarman*, 566 F.2d 817, 821 (2d Cir. 1977); *Beard v. Robinson*, 563 F.2d 331, 333 (7th Cir. 1977), *cert. denied*, 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978); *(Bivens* action); *Pritchard v. Smith*, 289 F.2d 153

States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The 1976 edition of the code labels this provision as § 1985(c). However, to avoid confusion I shall continue to refer to it as § 1985(3).

42 U.S.C. § 1988 provides in pertinent part that:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions

necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

**3.** In *Carlson v. Green*, 446 U.S. 14, 23–26, 100 S.Ct. 1468, 1474–1475, 64 L.Ed.2d 15 (1980), the Supreme Court in a *Bivens* action against federal officials, indicated that the federal common law provides a survival cause of action, in situations where unconstitutional conduct causes death, even where state law would not permit such an action. The court reasoned that such claims must survive; "[o]therwise, an official could know at the time he decided to act whether his intended victim's claim would survive." *Id.* at n.12. This reasoning seems equally appropriate for § 1983 actions against state officials based on allegations of unconstitutional conduct causing fatality.

(8th Cir. 1961) (action survived the defendant's death); *Salazar v. Dowd*, 256 F.Supp. 220, 222–23 (D.Colo.1966). As stated by the Fifth Circuit in *Brazier v. Cherry*, the lead case in this area:

> [I]t defies history to conclude that congress purposely meant to assure to the living freedom from such unconstitutional deprivation but that, with like precision, it meant to withdraw the protections of the Civil Rights statutes against the peril of death. The policy of law and the legislative aim was certainly to protect the security of life and limb as well as property against these actions. Violent injury that would kill was not less prohibited than violence that would cripple.

293 F.2d at 404.

The statutory mechanism that authorizes resort to state survival law to permit civil rights actions to survive the plaintiffs death is 42 U.S.C. § 1988. Because § 1983 is silent on the question of survival, 42 U.S.C. § 1988 requires, in light of this "deficiency" that state law be used unless it is "inconsistent with the constitution and the laws of the United States."

Courts have extended this analysis to permit incorporation of state wrongful death statutes into § 1983, through § 1988. *See e.g. Spence v. Staras*, 507 F.2d 554, 558 (7th Cir. 1974); *Mattis v. Schnarr*, 502 F.2d 588, 590–91 (8th Cir. 1974), *on remand*, 404 F.Supp. 643 (E.D.Mo.1975) *rev'd on other grounds*, 547 F.2d 1007 (8th Cir. 1976), *vacated on other grounds*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977); *Kalmanash v. Wolfe*, Slip Opinion Civ. 1798–CSH (S.D.N.Y., Dec. 14, 1978); *Smith v. Wickline*, 396 F.Supp. 555, 557–61 (W.D.Okl. 1975).

While § 1988 authorizes § 1983 actions after the true plaintiff's death, the nature of the actions differ depending on whether state survival or state wrongful death law is incorporated into the federal cause of action. Survival statutes simply allow the cause of action to survive regardless of the death of a party. Accordingly, a § 1983 survival action, relying on the incorporation of state survival law through § 1988, is essentially the assertion of the cause of action that the deceased would have had had he lived, requesting damages for violation of the decedent's rights. Wrongful death statutes, by contrast, provide for causes of action to arise in and for the benefit of certain designated persons in order to compensate them for their personal losses resulting from the decedent's death, against the persons who wrongfully caused the decedent's death. *See generally* Nachmod, *Civil Rights and Civil Liberties Litigation*, § 3.17 (1979); *compare* C.R.S. § 13–20–101 (1973) *with* C.R.S. §§ 13–21–202, 13–21–203 (1973). Section 1983 actions, relying on incorporation of state wrongful death law through § 1988, are, therefore, actions for damages to the plaintiffs by virtue of the decedent's unconstitutional killing. Such damages are not limited to, nor the same as the damages that the decedent would have been entitled to had he lived.

## III. THE PLAINTIFFS' CLAIMS

In order to rule on the pending motions in this case, it is necessary that I characterize the plaintiffs' claims in accordance with the above considerations. None of the pleadings is paradigmatic. The plaintiffs' "first" claim for relief in their second amended complaint, as I read it, involves two claims for relief under the above analysis: It includes a § 1983 survival claim and a § 1983 wrongful death claim.[4] These claims allege that the defendant, James Parr, intentionally and without provocation or justification, shot and killed the decedent under color of state law. The plaintiffs also allege, as previously mentioned, that the City of Woodland Park and Larry Iverson proximately caused

---

4. The plaintiffs specifically mention that they have standing to bring that claim under both the Colorado survival and wrongful death statutes, *see* ¶ 6, and they indicate that the plaintiffs and the decedent have suffered damages as a result of the defendants' unconstitutional conduct. *See* ¶¶ 20-22.

the decedent's death through their "grossly negligent" and "deliberately indifferent" planning and implementation of policies and procedures for police training and supervision, under which the defendant-Parr was trained and pursuant to which Parr was acting when he killed the decedent.[5]

■ The plaintiffs' "second" claim reincorporates all of the allegations in the first claim so it also involves both a § 1983 survival and a § 1983 wrongful death claim. However, it indicates that the defendant, City of Woodland Park, is vicariously liable under a theory of *respondeat superior.* To the extent this "second" claim merely reasserts the claims in the "first" claim for relief, it is redundant and I dismiss it *sua sponte.* To the extent this "second" claim relies on a theory of *respondeat superior* as a basis for § 1983 liability against the City of Woodland Park, it is also dismissed *sua sponte.* In *Monell v. Department of Social Services,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–2038, 56 L.Ed.2d 611 (1978), the Supreme Court held that the doctrine of *respondeat superior* is not applicable in actions under § 1983 and therefore, municipalities may not be held liable merely because they employ tortfeasors.

■ The plaintiffs also note, however, that this court has subject-matter jurisdiction over the "second" claim under the doctrine of pendent jurisdiction. Accordingly, they may have also been attempting to assert pendent state law survival and wrongful death claims against the defendants. To the extent the plaintiffs' "second" claim relies on state law, it properly states claims for relief. However, the prayer for relief on the "second" claim and the categories of damages requested must be reduced or eliminated in accordance with the state law damage limitations contained in the Colorado survival and wrongful death statutes.[6]

■ The plaintiffs' "third" claim for relief reiterates the confusion of issues contained in the first two claims and adds a claim based on the deprivation of the parents' personal liberty interest and fundamental right to raise their child without unlawful state interference. To the extent this "third" claim merely reasserts the first two claims it is dismissed as redundant. However, the plaintiffs' claim for violation of their own personal liberty interest and right to raise their child, states a separate claim for relief.[7] Such a claim is based upon injury to the plaintiffs due to the violation of their own constitutional rights by virtue of the decedent's unconstitutional

---

5. While merely negligent failure adequately to train, supervise and control police officers is not sufficient to render a municipality and supervisory personnel liable under § 1983 for deprivations of constitutional rights resulting from police brutality, such potential defendants may be liable where training or supervision is "so reckless or grossly negligent that future police misconduct is almost inevitable." *Hays v. Jefferson Cty.,* 668 F.2d 869, 874 (6th Cir.), *reh'g denied,* 673 F.2d 152 (1982); *see Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Leite v. City of Providence,* 463 F.Supp. 585, 590 (D.R.I.1978). I shall therefore consider the plaintiffs' "first" claim as properly stating claims against the City and Iverson under this standard.

6. The survival statute does not permit recovery for punitive damages or for pain and suffering. The wrongful death statute has a $45,000 ceiling where the decedent left neither a widow, widower, minor child nor dependent parents. The wrongful death statute has been interpreted to permit only recovery for pecuniary loss and not for punitive damages or for mental anguish or "grief of the living occasioned by the death of their relative, however dear." *Herbertson v. Russell,* 150 Colo. 110, 116, 371 P.2d 422 (1962).

7. Several courts have recognized such a right in § 1983 actions. *See e.g., Mattis v. Scnarr,* 502 F.2d 588, 593–95 (8th Cir. 1974); *Sanchez v. Marquez,* 457 F.Supp. 359, 363 (D.Colo. 1978); *Jones v. McElroy,* 429 F.Supp. 848, 852–53 (E.D.Pa.1977); *Smith v. Wickline,* 396 F.Supp. 555, 564–65 (W.D.Okl.1975); *see also Duchesne v. Sugarman,* 566 F.2d 817, 824–25 (2d Cir. 1977) (Involving the recognition of such a right in the context of the wrongful custody of a child); *cf. Morrison v. Jones,* 607 F.2d 1269, 1275 (9th Cir. 1979). I do not believe, however, that there is a "constitutional liberty interest in family life," granting a § 1983 cause of action to the family based on the unconstitutional deprivation of any one of its members. *Cf. Espinoza v. O'Dell,* Colo., 633 P.2d 455 (1981).

killing and requires incorporation of the state wrongful death statute.[8]

The plaintiffs' "fourth" claim restates the first three claims and then merely repeats portions of the "second" claim.[9] Accordingly, I dismiss the plaintiffs' entire "fourth" claim as redundant.

The plaintiffs' "fifth" and final claim for relief restates the first four claims and then adds a claim under § 1985(3), alleging a conspiracy to violate the decedent's and plaintiffs' constitutional rights. To the extent this "fifth" claim merely reasserts the first four claims it is dismissed as redundant. The plaintiff's allegations of a conspiracy to violate the decedent's constitutional rights are really two claims: a § 1985(3) survival claim and a § 1985(3) wrongful death claim. The plaintiffs' allegations of a conspiracy to violate their own constitutional rights, constitute a separate claim which does not require incorporation of state law.

Having sorted out the plaintiffs' claims, I shall resolve the pending motions.

## IV. MOTION TO DISMISS

The defendants move to dismiss the plaintiff-Sheryl Dianne Sager's second and third claims for relief on the ground that as the decedent's sister, she lacks standing to assert those claims. The defendants also move to dismiss all of the plaintiffs' fifth claims for relief under § 1985(3), on the ground that the plaintiffs have failed to allege an invidious class-based animus.

## A. THE SISTER'S STANDING

The plaintiffs' third claim for relief alleges that the defendants deprived the plaintiffs of their personal liberty interest in their child and their fundamental right to raise their child without unlawful state interference. I have previously addressed the question whether such a right may be asserted by a sibling in *Sanchez v. Marquez*, 457 F.Supp. 359, 363 (D.Colo.1978). I stated:

> Such a right may have been recognized as another dimension to the right of privacy; a personal right 'implicit in the concept of ordered liberty.' However, where the right to raise, educate and associate with one's own child may rise to constitutional dimensions, the right of siblings to have their brother or sister continue living does not. The relationship between a parent and its offspring and the relationship between brother and sibling is not a difference in degree; it is a difference in kind. Though one has a constitutional right to have or not have a child, one does not have a constitutional right to have or not have a brother.

*Id.*

Accordingly, the defendants' motion to dismiss the plaintiff-Sheryl Sager's third claim for relief, is granted.

As I noted previously, the plaintiffs' second claim for relief is really two pendent state law claims based on the Colorado survival and wrongful death statutes. However, the defendants properly note that a

---

**8.** It might be argued that since this claim is based on the violation of the parents' own constitutional rights, they may bring, therefore, an action directly under § 1983 without incorporating state law through § 1988. This argument may have some conceptual problems. For example, while the plaintiffs allege that the defendant Parr, intentionally and willfully violated the decedent's constitutional rights, they can hardly claim that Parr intentionally violated the parents' rights where there is no indication that Parr even knew of the parents' existence at the time of his act. On the other hand, the allegations against the City and police chief, Iverson, might still be actionable. If those defendants implemented policies and procedures that were so grossly negligent that

wrongful police killings were virtually inevitable, it is similarly inevitable that some parents would be wrongfully deprived of their liberty interests in and their rights to raise their children who would be wrongfully killed by such policies. However, I need not consider a claim under this theory since the plaintiffs would not be entitled to any additional recovery than what they could recover in a § 1983 action, relying on incorporation of the state wrongful death statute, through § 1988. *See infra* at Pt. V–B of this opinion.

**9.** ¶¶ 26, 27 and the wherefor clause in the "second" claim is identical to ¶¶ 32, 33 and the wherefor clause in the "fourth" claim.

decedent's sister is not generally a proper party to actions brought under those statutes.

C.R.S. § 13–21–201(1)(c), which is applicable to wrongful death actions brought under § 13–21–202 by virtue of § 13–21–203(1), specifically states who may bring an action for a minor's wrongful death. It states:

> If the deceased is a minor or unmarried, then by the father or mother who may join in the suit and each shall have an equal interest in the judgment, or if either is dead by the survivor.

This section does not provide for a cause of action by a deceased minor's sister. Accordingly, Sheryl Sager lacks standing to assert a state wrongful death claim. C.R.S. § 13–20–101(2) provides that a survival action under § 13–20–101(1) may be brought by the personal representative of the deceased. Since Sheryl Sager is suing individually and not as a personal representative, she lacks standing to assert a state law survival claim.

Accordingly, the defendants' motion to dismiss the plaintiff-Sheryl Sager's second claim for relief is granted.

■ I also dismiss the plaintiff-Sheryl Sager's first claim for relief. I have characterized the first claim for relief as including a § 1983 survival and a § 1983 wrongful death claim. Since § 1983, through § 1988, incorporates the state statutes and these statutes do not grant standing to the decedent's sister, she lacks standing to assert those § 1983 claims. While it is true that § 1988 only mandates incorporation of state law where it is not inconsistent with federal law, I find that the Colorado statutes' standing provisions, as applied to the plaintiff-Sheryl Sager in the instant case, are not inconsistent with the purposes and policies underlying § 1983, *see, Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), since the decedent's parents may still assert those claims.[10]

**10.** I might be persuaded to reach a different result if the decedent died unsurvived by parents. *See infra* at Pt. V–B of this opinion for a

### B. THE § 1985(3) CLAIM

■ To state a claim under 42 U.S.C. § 1985(3), a complaint must allege five elements: 1) a conspiracy; 2) motivated by "racial or perhaps otherwise class-based invidious discriminatory animus"; 3) "for the purpose of depriving either directly, or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws"; 4) that the conspirator committed some act in furtherance of the conspiracy; and 5) that the plaintiff was either "injured in his person or property" or was "deprived of having and exercising any right or privilege of a citizen of the United States." *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

■ It is not sufficient under § 1985(3) to allege individual discriminatory animus or even group animus unless the class discrimination can be deemed invidious. *See e.g. Lessman v. McCormick*, 591 F.2d 605, 608 (10th Cir. 1979); *Morgan v. Odem*, 552 F.2d 147, 149 (5th Cir. 1977); *Askew v. Bloemker*, 548 F.2d 673, 678 (7th Cir. 1976). This requirement is the primary means that courts employ to ensure that § 1985(3) does not become a general federal tort law. *See Jackson v. Cox*, 540 F.2d 209, 210 (5th Cir. 1976). The principle underlying this requirement is the recognition that some groups warrant special federal assistance in protecting their civil rights. Race is, of course, the quintessential invidious class. Other classes which courts have found sufficiently invidious for § 1985(3) purposes include: gender, *see Life Ins. Co. of North America v. Reichardt*, 591 F.2d 499, 505 (9th Cir. 1979); *Hodgin v. Jefferson*, 447 F.Supp. 804, 808 (D.Md.1978); national origin, *see Cartolano v. Tyrell*, 421 F.Supp. 526, 532 (N.D.Ill.1976); *Arnold v. Tiffany*, 359 F.Supp. 1034, 1036 (C.D.Cal.) *aff'd*, 487 F.2d 216 (9th Cir.), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1973); political association, *Means v. Wilson*, 522 F.2d 833,

discussion of when state law should be disregarded as inconsistent with federal law in this context.

839–40 (8th Cir. 1975), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976); *Glasson v. City of Louisville*, 518 F.2d 899, 911–12 (6th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1976); and religious affiliation, *Marlowe v. Fisher*, 489 F.2d 1057, 1064–65 (6th Cir. 1973); *Weiss v. Willow Tree Civic Ass'n*, 467 F.Supp. 803, 812 (S.D.N.Y.1979).

 In the instant case, the plaintiffs assert, in their fifth claim for relief that the decedent is a member of the class of teen-age-male drivers, the plaintiffs-Ralph and Susan Sager are members of the class of parents of victims of unlawful police killing and the plaintiff-Sheryl Sager is a member of the class of sisters of victims of unlawful police killing. These classifications are more gormless than invidious. Accordingly, · the defendants' motion to dismiss the plaintiffs' entire fifth claim for relief is granted.

## V. MOTION TO STRIKE

### A. QUALIFIED IMMUNITY DEFENSE

The plaintiffs move to strike the defendants, City of Woodland Park and Larry Iverson's qualified immunity defense on the ground that such a defense is unavailable to municipalities. In *Owen v. City of Independence, Mo.*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Supreme Court decided this issue, holding that municipalities are not entitled to invoke such a defense. The court first considered the language and legislative history of 1983 and characterized 1983's purposes as broadly remedial. Next, the court found that, unlike the tradition of immunity at common law of legislators, judges, police officers, and other government officials, there was no such tradition of immunity for municipal corporations at the time 1983 was enacted. It stated: "In sum, we can discern no 'tradition so well grounded in history and reason' that would warrant the conclusion that in enacting 1983, the 42nd Congress *sub silentio* extended to municipalities a qualified

immunity based on the good faith of their officers." *Id.* at 650, 100 S.Ct. at 1415.

Finally, the court referred again to the broadly remedial purposes of 1983, and emphasized the important deterrent function of a damages remedy for Fourteenth Amendment violations, especially "when the wrongdoer is the institution that has been established to protect the very rights it has transgressed." *Id.* at 651, 100 S.Ct. at 1415. It rejected as irrelevant the policy arguments based upon (1) the injustice to a defendant held liable despite the absence of "bad faith" and (2) the danger that the threat of liability will undercut a defendant's willingness to perform his government job effectively. These considerations, the court said, were applicable to individuals, but not to local governments in light of the "principle of equitable loss-spreading." *Id.* at 657, 100 S.Ct. at 1418.

 Accordingly, the plaintiffs' motion to strike the City of Woodland Park's qualified immunity defense is granted.

However, Larry Iverson is an individual and a governmental employee; not a municipality. The supreme court has stated on several occasions that government employees, including policy-making employees are entitled to invoke a qualified immunity defense. *See Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 240–50, 94 S.Ct. 1683, 1688–1693, 40 L.Ed.2d 90 (1974). Accordingly, the plaintiffs' motion to strike Larry Iverson's qualified immunity defense is denied.

### B. STATE LAW DAMAGE LIMITATIONS

I have stricken much of the plaintiffs' complaint on my own initiative and I do not hesitate, therefore, to strike from the defendants' answer where appropriate.[11] The defendants-City of Woodland Park and Larry Iverson's fifteenth affirmative defense,

---

11. Moreover, Rule 12(f), F.R.Civ.P., specifically states that "Upon motion made by a party before responding to a pleading or, ... *upon the court's own initiative at any time*, the court may order stricken from any pleading any insufficient defense, or any redundant, immaterial, impertinent or scandalous matter." [Emphasis added.]

alleges that the damages awarded in this action, if any, are limited by the Colorado wrongful death and survival statutes. I hold that this defense should be stricken as applied to the plaintiffs' § 1983 claims.

The Supreme Court has twice dismissed certiorari in cases involving this issue, *See O'Dell v. Espinoza,* —— U.S. ——, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982); *Jones v. Hildebrant,* 432 U.S. 183, 97 S.Ct. 2283, 53 L.Ed.2d 209 (1977), so this issue has not been definitively resolved. In *Jones v. Hildebrant,* Justice White, dissenting from the court's *per curiam,* dismissal, indicated that state law damage limitations are inapplicable in § 1983 wrongful death actions. He stated:

> It is clear that by enacting § 1983, Congress intended to create a federal right of action separate and independent from any remedies afforded under state law. State law may be relevant where a trial court is seeking to fix a remedy under § 1983, but it is by no means clear that state law may serve as a limitation on recovery where the remedy provided under state law is inadequate to implement the purposes under § 1983. Thus 'both federal and state rules may be utilized, whichever better serves the policies expressed in the federal statutes.'

*Id.* at 190, 97 S.Ct. at 2287. [Citations omitted]. Indeed, I followed this view in *Sanchez v. Marquez,* 457 F.Supp. 359, 362 n.1 (D.Colo.1978).

I find that the proper interpretation of §§ 1983 and 1988 supports these intimations.

First recognition of the proper function of § 1983 and the difference in the values of state law rights and constitutional rights suggest application of federal damages rules in the instant case. The Supreme Court has noted on several occasions that the damages rule in § 1983 cases is "a federal rule responsive to the need whenever a federal right is impaired." *Moor v. Cty. of Alameda,* 411 U.S. 693, 703, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596 (1973); *Sullivan v. Little Hunting Park,* 396 U.S. 229, 240, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969). "Where federally protected rights have been invaded it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

▮▮▮▮ It is axiomatic that the civil rights acts were not intended to serve as a general tort remedy, *see Parratt v. Taylor,* 451 U.S. 527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420, 434 (1981); rather congress recognized that "a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right even though the same act may constitute both a state tort and the deprivation of a constitutional right." *See Monroe v. Pape,* 365 U.S. 167, 196, 81 S.Ct. 473, 488, 5 L.Ed.2d 492 (Harlan, J. concurring).[12] Accordingly the purposes of § 1983—compensation for and deterrence of deprivations of *constitutional rights,* not state law rights,— relate directly to the nature of the damages available in § 1983 actions. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616, 632 (1981); *Carey v. Piphus,* 435 U.S. 247, 257 n.11, 98 S.Ct. 1042, 1049 n.11, 55 L.Ed.2d 252 (1978). The damage rules applicable in § 1983 actions must, therefore, address both the serious nature of a constitutional injury and the corresponding importance of preventing its recurrence. Such necessary damages may far exceed those required to satisfy the policies underlying the state statutes.

**12.** Further, the mere availability of a state remedy arising from the same transaction underlying a constitutional violation, does not generally preclude the availability of a § 1983 action, with the exception of certain claims based on the negligent deprivation of property under color of state law. *See Howse v. DeBerry Correctional Institute,* 537 F.Supp. 1177, 1178–81 (M.D.Tenn.1982), discussing the proper application of the Supreme Court's opinion in *Parratt v. Taylor.* Since the instant case involves allegations of intentional and grossly negligent conduct and of deprivations of life and liberty interests, the availability of state survival and wrongful death remedies does not preclude the availability of § 1983 relief.

Further, in recognition of the seriousness of constitutional injuries redressed under § 1983, federal courts have employed a full panoply of damage categories. Damages available in appropriate § 1983 actions may include mental and emotional distress, punitive or exemplary damages, pecuniary damages and in some situations even presumed or inferred damages. *See generally* Nachmod, *Civil Liberties and Civil Rights Litigation* Ch.4 (1979). I can not perceive any reason why courts would restrict these damages in situations where constitutional injuries are most pernicious—when death results. If anything, courts should be alert to expand available damage remedies to deter, punish and compensate for such egregious violations. Accordingly, I conclude that the proper interpretation of § 1983 requires that the damage categories generally available in § 1983 actions, be available in situations where constitutional violations result in death.

Second, assuming *arguendo* that § 1983 does not mandate resort to generally available § 1983 damage categories in the instant case, the proper interpretation of § 1988 does. The Supreme Court's major interpretations of § 1988's inconsistency clause strongly suggest resort to the federal common law to determine damages in such situations.[13]

In *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), the court relied on § 1988 to imply the existence of a damage remedy under 42 U.S.C. § 1982, a provision barring private racial discrimination in the sale and rental of property. The court impliedly interpreted § 1988's inconsistency clause by classifying § 1988 as a provision under which state law may expand but not contract federal causes of action. *See* Eisenberg, *State Law and Federal Civil Rights Cases: The Proper*

*Scope of § 1988*, 128 U.Pa.L.Rev. 499, 519 (1980). The court reasoned:

> ...compensatory damages for deprivation of a federal right are governed by federal standards as provided in ... § 1988.... This means, as we read § 1988, that both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes.

396 U.S. at 239–240, 90 S.Ct. at 405–406.

Under this interpretation of § 1988 there is little question that state law limitations on damages would be inapplicable in all § 1983 survival and wrongful death actions since these restrictions do not better serve the policies expressed in the federal statutes.

In *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), the court rejected the *Sullivan* court's approach to § 1988's inconsistency clause. Nevertheless, even the stricter standard enunciated in *Robertson* suggests the inapplicability of state law damage restrictions in § 1983 wrongful death or survival actions where parents sue for the unconstitutional killing of their offspring. In *Robertson* the original plaintiff brought an action pursuant to § 1983 for malicious prosecution but died, unsurvived by family, before trial. The original plaintiff's executor continued this action but the defendant claimed that the action abated under the Louisiana Survival Statute, which only provides a survival remedy for the immediate family of the deceased. The plaintiff-executor argued that the state survival law is "inconsistent with federal law" pursuant to § 1988 since its application would defeat the action.[14]

The Supreme Court rejected the argument that restrictive state rules are automatically inconsistent with federal law. It reasoned:

---

13. Theoretically, this result may be reached in either of two ways: by incorporating the state survival and wrongful death statutes as a means to bring those actions but appealing to federal common law on damages, or by discarding the state statutes entirely and relying on the federal common law for both the means to bring the actions and for damages.

14. The district and circuit courts approved this argument before being reversed by the supreme court. *See Shaw v. Garrison*, 391 F.Supp. 1353 (D.La.1975) *aff'd*, 545 F.2d 980 (5th Cir. 1977).

A state statute cannot be considered inconsistent merely because the statute causes the plaintiff to lose the litigation. If the success of the § 1983 action were the only benchmark there would be no reason at all to look to state law, for the appropriate rule would then always be one favoring the plaintiff and its source would be essentially irrelevant. But § 1988 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby.

*Id.* at 593, 98 S.Ct. at 1996.

The court then articulated a new standard for determining when state law is inconsistent with federal law. Under the *Robertson* standard, state law is inconsistent with federal law where state law is "generally inhospitable" to the federal cause of action. *Id.* at 594, 98 S.Ct. at 1997. In the § 1983 context state law is generally inhospitable and therefore inconsistent with federal law where the state law significantly restricts the deterrent and compensatory policies underlying § 1983.

While the *Robertson* court found that the application of state survivorship law did not significantly restrict the policies underlying § 1983, their language and reasoning support a contrary result in the instant case.

For example, the court reasoned that § 1983's policy of compensating injured persons would not be undermined by Louisiana's survival law since mere executors are not truly injured parties pursuant to § 1983. *Id.* The court further stated that this reasoning "does not of course ... *preclude recovery by survivors suing under § 1983 for injury to their own interests,*" *id.* at n.9 [Emphasis added].

In the instant action, application of Colorado's wrongful death damage rules would substantially limit recovery by the plaintiff-parents, who are not mere executors and are suing under § 1983 for injury to their own interests. As mentioned previously, the Colorado wrongful death statute does not compensate any non-pecuniary injuries such as mental anguish and suffering, loss of companionship and deprivation of the constitutional liberty interest in and right to raise a child. Accordingly, application of the Colorado wrongful death damage limitations would undermine the compensation policy of § 1983 and, therefore, would be "inconsistent with federal law" under *Robertson.*

Further, the *Robertson* court held that § 1983's policy of deterring abuses of power by those acting under color of state law would not be thwarted by appeal to Louisiana state law since most people do not die unsurvived by family and, therefore, most actions would survive the plaintiff's death. It stated:

And given that most Louisiana actions survive the plaintiff's death, the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality, *at least in situations where there is no claim that the illegality caused the plaintiff's death.*

*Id.* at 592, 98 S.Ct. at 1996 [Emphasis added].

The *Robertson* court's recognition of the potential anti-deterrent effects of state law limitations in situations where unconstitutional conduct causes death has been adopted by the Seventh Circuit and affirmed by the Supreme Court in *Green v. Carlson,* 581 F.2d 669 (7th Cir. 1978), *aff'd, Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

In *Carlson,* the plaintiff brought suit directly under the U. S. constitution pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and § 1331, alleging that federal prison officials violated her son's Eighth Amendment rights by failing to provide adequate medical attention, and thereby causing his death while in prison. The district court held that due to limitations on the damages recoverable under Indiana's survival and wrongful death statute, the plaintiff could not, as a matter of law, satisfy the $10,000 jurisdictional amount, and dismissed the complaint.

The Seventh Circuit reversed the district court, holding that Indiana's survival statute should be ignored, since "inconsistent with federal law pursuant to *Robertson*." *Green v. Carlson*, 581 F.2d 669 (7th Cir. 1978). The circuit court initially noted that since the plaintiff's action involved a *Bivens*-type claim, "§ 1988 has no statutory effect," *id.* at 673. The court nonetheless, determined that "an analysis similar to that developed in *Robertson*" would be appropriate because actions brought under the Civil Rights Acts and *Bivens* "further the same policies" and are "conceptually identical." *Id.*

Using the *Robertson* test, the circuit court held that application of the Indiana survival law would violate the deterrence rationale underlying § 1983 and *Bivens,* in situations where unconstitutional conduct causes death. It stated:

It would be anomalous as well as ironic to hold that Jones, Jr. could have sought redress for violation of his constitutional rights had he survived the alleged wrongdoing, but because the wrongdoing caused his death, the law is impotent to provide a remedy to benefit his estate. Such a holding would not only fail to effectuate the policy of allowing complete vindication of constitutional rights, it would subvert that policy. ... Allowing recovery for injury but denying relief for the ultimate injury—death—would mean that it would be more advantageous for a tortfeasor to kill rather

than to injure. Surely this cannot be the intent of the law.

*Id.* at 674.

On certiorari, the Supreme Court affirmed, noting that *Robertson* supported the circuit court's result. *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).[15] The majority reasoned that in order to "prevent frustration of the deterrence goals of § 1983, (which in part also underlies *Bivens* actions, . . . ) '[a] state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him.' " [Citing *Robertson* 436 U.S. at 592, 98 S.Ct. at 1996] *id.* at 24–25, 100 S.Ct. at 1474–1475. Thus in order to implement the deterrence goals of § 1983, disregard of restrictive state damage limitations is necessary in situations where unconstitutional conduct causes death; "[o]therwise an official could know at the time he decided to act whether his intended victim's [damage] claim would survive." *Id.* at n.12.[16]

▆▆▆▆ In summary, both §§ 1983 and 1988 mandate dissuasion of the state law damage restrictions in the instant case. Recognition of the proper function of § 1983, the differences in the policies underlying state law rights and constitutional rights and the particular need to apply these considerations to the more egregious constitutional violations requires application of the generally available § 1983 damage categories in the instant case. Alternatively, the state law damage restrictions must be disregarded because their application

**15.** In *Carlson*, the Supreme Court noted in a footnote that there may be reasons for not incorporating state law through § 1988 and applying the *Robertson* analysis in *Bivens* actions since such actions involve federal defendants brought into federal court for violating federal interests. *Id.* at 24 n.11, 100 S.Ct. at 1475 n.11. However, in the text, the majority noted that the reasoning underlying *Robertson* supported its resort to the federal common law and disregard of the restrictive state law.

**16.** There is one other potential distinction between *Carlson* and the instant case. In *Carlson*, application of the state law damage limitations would have precluded the action entirely, whereas in the instant case, state law would permit the action to continue but would substantially restrict available categories of dam-

ages. *See* note 6 and pages 12–13 of this opinion *supra.* I find that this is a distinction without a difference since a damage action with substantially restricted or negligible damages provides little or no deterrence. For example, incorporation of either the Colorado survival or wrongful death statutes would disallow punitive damages, even where civil rights violations are willful, malicious and fatal. Such a result flies in the face of the strong legislative intent to deter particularly the more odious deprivations of constitutional rights. *See also City of Newport v. Facts Concert, Inc.,* 453 U.S. 247, 266, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616, 632 (1981), for a discussion of how punitive damages serve a third purpose under § 1983—retribution.

would be inconsistent with the purposes and policies underlying § 1983 and therefore, "inconsistent with federal law" pursuant to § 1988. Reliance on the Colorado wrongful death damage rules would undermine the compensation rationale underlying § 1983 since it would limit and "preclude recovery by survivors suing in their own interest." Since the allegedly unconstitutional conduct caused the decedent's death, application of Colorado survival and wrongful death damage rules would undermine the deterrence goals of § 1983.

Accordingly, I hold that the plaintiffs' § 1983 claims are not limited by the Colorado wrongful death and survival damage restrictions. Therefore, the defendants' fifteenth affirmative defense is stricken as applied to the § 1983 claims.[17]

## VI. MOTION FOR SUMMARY JUDGMENT ON THE THIRD-PARTY CLAIM

The third-party plaintiffs allege that the City of Colorado Springs, through its agency, the Colorado Springs Training Academy, undertook the obligation to train the defendant, Officer Parr and it did so negligently. Officer Parr was hired as a police officer for the City of Woodland Park in January, 1979 subject to his being certified within one year as a peace officer as required by C.R.S. § 24–32–601 *et seq.* (1973) (commonly known as "The Law Enforcement Training Academy and Peace Officers Standards and Training Act"). Officer Parr attended the Colorado Springs Training Academy from May 9, 1979 through June 29, 1979 and was certified as a peace officer upon his completion of the program.

The deposition testimony of the officer in charge of the Colorado Springs Training Academy, Lieutenant Otis Kirkbridge, indicates that the academy showed a film to the police class, entitled "Introduction to Crime Prevention." The film shows a police officer, armed with a shotgun, stop a suspect during an attempted burglary. The officer had the suspect lay spread eagled on the ground and then, holding the shotgun to the suspect's head with one hand, used his other hand to handcuff the suspect. The third-party plaintiffs allege that this was the exact procedure Officer Parr used when he arrested and killed the decedent, Bryan Scott Sager.

Kirkbridge testified that he purchased the film for the Colorado Springs Police Department in 1976, from the Motorola Corporation and that the film was shown to all police trainees at the Colorado Springs Training Academy, including Officer Parr. The film was shown in a course on crime prevention. Lt. Kirkbridge indicated that the procedure shown in the film and subsequently followed by Parr, was improper and that a shotgun should never be used in that manner. He further testified that the film was shown for the purpose of pointing out improper technique and generating class discussion, but to his knowledge the class was not informed that such technique was improper. The third-party plaintiffs, from this testimony, allege that Parr saw the film, was never instructed that such technique was improper and unsafe and used this improper and unsafe technique on the decedent which resulted in his killing.[18]

The third-party defendant moves for summary judgment on this claim,[19] alleging that it owes no duty to those who are injured by graduates of its academy and

---

**17.** Despite disregard of the state law damage limitations, the plaintiffs may not recover punitive damages against the City of Woodland Park since such damages are not recoverable against municipalities in § 1983 actions. *See City of Newport v. Facts Concert, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

**18.** The third-party defendant claims that the third-party plaintiffs have not conclusively established that Parr was not instructed about the proper use of a shotgun. However, since

the third-party defendants have not established or presented any evidence indicating that he was properly trained, summary judgment on that ground is inappropriate. *See* Rule 56(e), F.R.Civ.P.

**19.** The third-party plaintiffs assert two cognizable claims against the third-party defendant. First, the third-party plaintiffs request contribution from the third-party defendant, under the Colorado Uniform Contribution Among Tortfeasors Act, C.R.S. § 13–50.5–101 (1973)

that its acts, even if negligent, can not be deemed the proximate cause of the decedent's death as a matter of law. I disagree.

 A cause of action for negligence requires proof of:

1. A duty or obligation recognized by the law requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks.

2. A failure on his part to conform to the standard required. . . .

3. A reasonabl[y] close causal connection between the conduct and the resulting injury . . . [and]

4. Actual loss or damage resulting to the interests of another.

Prosser, *The Law of Torts*, P. 143 (1973).

### A. DUTY

"Negligence is a matter of risk—that is to say, of recognizable danger of injury. It has been defined as 'conduct which involves an unreasonably great risk of causing damage' or more fully, conduct 'which falls below the standard established by law for the protection of others against unreasonably great risk of harm.'" *Id.* at 145. Parties owe a duty to protect against their conduct that causes unreasonable risks of harm to all those within the foreseeable scope of the risk. *See Palsgraf v. L. I. R. R.*, 248 N.Y. 339, 162 N.E. 99 (1928) (Cardozo, J.). However, the risk of harm of which such a party has a duty to protect against, must be unreasonable. In determining whether a particular risk is unreasonable, the court must consider the probability of harm, the gravity of the resulting injury and the burden of adequate precautions. "[I]f the probability be called P; the injury L; and the burden B; liability depends on whether B is less than L multiplied by P, i.e., whether B is less than PL." *United States v. Carroll*

*Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947) (L. Hand, C.J.)

 In the instant case, I find that, as a matter of law, the risks created by the third-party defendant's alleged failure to train properly its officers on shotgun-arrest technique are unreasonable, that the third-party defendant, therefore, owes a duty to train properly its officers, and that such duty foreseeably extends to those wrongfully injured as a proximate result of such improper training.

Accordingly, the third-party defendant's assertion that it owed no duty to those injured by improperly trained graduates of its academy, is without merit.

### B. CAUSATION

 The third-party defendant alleges that even if it breached a duty of care, it did not proximately cause the decedent's death since Officer Parr's act was an intervening cause. An intervening cause does not break the initial chain of causation unless it is unforeseeable. *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.*, 33 Colo.App. 99, 517 P.2d 406, 414 (1973). "Reasonably foreseeable intervening causes must be viewed as within the scope of the original risk created by a defendant's negligence, if any, even to the extent of the foreseeable negligence on the part of third parties." *Id.* If Officer Parr killed the decedent as a result of the improper shotgun technique previously discussed, it can be found that his act was foreseeable and does not break the third-party defendant's chain of causation. However, if Parr intentionally and willfully killed the decedent as the plaintiffs allege, Parr's act is an unforeseeable superseding intervening cause that breaks the third-party defendant's causal chain.[20, 21]

and common law contribution, on the theory that the third-party defendant is liable for part or all of the negligence liability to the plaintiff. Second, they assert a claim for indemnification based on the breach of an express or implied contract to train adequately, the defendant, James Parr, Jr. The third-party defendant's motion for summary judgment is apparently directed only to the contribution claims and not to the claims based on contractual indemnity.

20. Further, the third-party plaintiffs' own allegedly "grossly negligent" and "deliberately indifferent" acts might be superseding intervening causes as well.

21. The third-party defendant, citing *Hays v. Jefferson Cty.*, 668 F.2d at 869, properly notes

Since no parties have presented any conclusive facts on any theory of causation, summary judgment on this claim is improper.

For the reasons stated in this opinion, it is hereby,

ORDERED that the defendant's motion to dismiss is granted. The plaintiffs' entire fifth claim for relief is dismissed and the plaintiff, Sheryl Sager, is dismissed from this action;

IT IS FURTHER ORDERED that the remaining plaintiffs' entire fourth claim for relief and portions of their second and third claims for relief, are stricken as indicated in this opinion;

IT IS FURTHER ORDERED that the plaintiffs' motion to strike is granted in part and denied in part. The defendant, City of Woodland Park's eleventh affirmative defense is stricken.

IT IS FURTHER ORDERED that the defendants, City of Woodland Park and Larry Iverson's fifteenth affirmative defense is stricken as applied to the plaintiffs' first and third claims for relief.

IT IS FURTHER ORDERED that the third-party defendant's motion for summary judgment is denied.

---

that simple negligence is an insufficient basis to establish § 1983 liability against a municipality for its inadequate police training. However, the third-party contribution claims are predicated on state law negligence, not § 1983, and therefore, do not require proof of a basis of liability other than simple negligence.