Linda ROMAN, et al., Plaintiffs,

v.

CITY OF RICHMOND, et al., Defendants.

Wilbert GUILLORY, et al., Plaintiffs,

v.

CITY OF RICHMOND, et al., Defendants.

Nos. C–80–4702 RPA, C–82–412 RPA.

United States District Court, N.D. California.

Sept. 1, 1983.

Austin R. Gibbons, Walnut Creek, Cal., for plaintiffs.

John H. Scott, Cole & Scott, San Francisco, Cal., for defendants.

## OPINION AND ORDER

AGUILAR, District Judge.

On June 3, 1983, following a trial of approximately four months, the jury sitting in the consolidated trial of the above-entitled lawsuits returned a 1.5 million dollar verdict against Clinton Mitchell, Samuel Dudkiewicz, Leo Garfield and the City of Richmond for the shooting death by police officers of Johnny Roman, and a 1.5 million dollar verdict against Samuel Dudkiewicz, Leo Garfield, Ernest Clements and the City of Richmond for the shooting death by police officers of Michael Guillory. The lawsuits, brought by the heirs of each of the deceased men, alleged that each man had been deprived of life without due process of law in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

This action is now before the Court on defendants' motion for judgment notwithstanding the verdicts, for a new trial, or for a reduction of the damages awards. Defendants have asserted numerous bases for their motions. A separate Opinion and Order, filed concurrently herewith, addresses the contentions of defendants relating to the adequacy of remedies under California law, whether state law limits the damages recoverable by plaintiffs, and the propriety of an award of damages representing deterrence. This Opinion and Order addresses all other contentions made by defendants by their current motions.

## I. EVIDENTIARY SUPPORT FOR THE VERDICTS

### A. Custom or Policy

Defendants contend that the City, and Garfield and Clements in their official capacities, should have judgment entered in their favor as plaintiffs failed to prove any official or unofficial policy or custom that proximately caused the deaths of either Roman or Guillory.

There was a significant amount of evidence, both direct and circumstantial, of an informal policy, or formal or informal custom, that encouraged and authorized violence and brutality by Richmond police officers against black residents of Richmond. Defendants assert that no custom of unlawfully killing Richmond citizens was proven. Even if this assertion is correct, this is not the proper inquiry. The theory of plain-

tiffs' cases was that there was a custom or policy of brutality by police officers, and that the exercise of this brutality caused the deaths of Roman and Guillory. Plaintiffs elicited substantial evidence to support this theory.

Defendants also contend that there was no evidence that any policy or custom caused the deaths of Roman or Guillory because both incidents involved "quick judgment" by the police officers, and there was no evidence that a change in policy would have caused the officers to have exercised their judgment differently. Defendants are simply arguing the evidence here. There was substantial evidence that the custom of the Richmond Police force, and particularly of the officers involved, in the Roman and Guillory shootings, was to engage in the use of excessive force and that that force caused the deaths of Roman and Guillory. There was also evidence as to what changes could have been made to the affairs and policies of the police department that could have prevented the deaths of Roman and Guillory, and that these changes were not made. The defendants had their opportunity to make the above argument to the jury. The jury did not accept it. The jury's verdicts against the City and the supervisory personnel in their official capacity are supported by more than substantial evidence, and the Court will not disturb them.

## B. Clements

Defendants assert that judgment should be entered in favor of defendant Clements because the evidence failed to show that he was acting as Deputy Chief of Police at the time of the Guillory shooting. Defendants assert that the only evidence pertaining to this issue was Clements' testimony that he became deputy chief in January of 1982. The Guillory shooting occurred in January of 1982, but defendants claim that there is no evidence that Clements was deputy chief at the time of the shooting.

The Court's recollection of the evidence is that it was not clear when Clements was appointed deputy chief vis-a-vis the date of the Guillory shooting. However, plaintiffs proceeded at trial on the theory that Clements had supervisory responsibilities at the time of the shooting, whether the supervisory responsibilities were exercised in the capacity of deputy chief or in the capacity of patrol bureau commander. There was substantial evidence that prior to and at the time of the Guillory shooting Clements was responsible for the supervision, training and discipline of police patrol personnel. Therefore, there is substantial evidence to support the jury's verdict that Clements was liable for the death of Guillory.

Defendants were in the position to know the exact date that Clements became deputy chief, and certainly knew the date that Guillory was killed. However, defendants never raised the challenge to Clements' liability on the ground that he was not yet deputy chief at the time of the Guillory shooting until after the trial. Defendants could have brought a motion for summary judgment predicated on this contention prior to trial. Defendants could have elicited testimony from Clements at trial that he was not deputy chief at the time of the Guillory shooting. Defendants could have moved for a directed verdict on the grounds that Clements was not deputy chief at the time of the Guillory shooting. Defendants did none of these things, and in fact acquiesced in plaintiffs' theory that Clements was exercising supervisorial responsibilities before, and on the date of, the Guillory shooting.

Defendants argue that because plaintiffs' complaint named Clements as a defendant in his capacity as deputy chief, plaintiffs cannot base his liability upon his acts in any other capacity. Even if it were now conclusively established that Clements was not deputy chief at the time of the Guillory shooting, defendants acquiesced in plaintiffs' theory, for which they produced substantial evidence, that Clements was exercising supervisorial functions and that his improper exercise of these functions caused the death of Guillory. Thus, defendants cannot now restrict plaintiffs to the theory of their complaint.

Federal Rule of Civil Procedure 15(b) provides that when issues not raised by the pleadings are tried by the express or implied consent of the parties, those issues shall be treated in all respects as if they had been raised in the pleadings. An amendment to the pleadings to allow them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but the failure to so amend does not affect the result of the trial of those, issues. Defendants impliedly consented to the trial of the issue of the liability of Clements though he may not have been deputy chief at the time of the Guillory shooting. Though plaintiffs may move to amend their complaint to cause it to conform to this evidence and raise this issue, the result of the trial, holding Clements responsible for the death of Guillory, will not be affected. Accordingly, defendants' motion for judgment notwithstanding the verdict as to defendant Clements is without merit.

*C. Individual Liability of Supervisorial Defendants*

Defendants assert that as neither Garfield nor Clements individually participated in the two shootings, they cannot be held liable in their individual capacity (as distinguished from their supervisorial capacity for failure to supervise their officers, etc.).

■ Under the instruction given to the jury on the individual liability of these two defendants, the jury was instructed:

In their individual capacities Defendants LEO GARFIELD, and ERNEST CLEMENTS cannot be held liable unless they caused or participated in an alleged constitutional deprivation. It is for you to decide whether a causal connection, or an affirmative link, between the constitutional violations complained of and the supervisory official exists. The supervisory officials must have so exercised their authority as to have made their own conduct a proximate cause of the alleged constitutional violations.

This instruction is a proper statement of the law regarding civil rights liability of supervisory officials in their individual capacities.

*See Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976).

■ There was sufficient evidence to support the jury's verdict to the extent it may have found Garfield and Clements individually liable for the deaths of Roman and Guillory. Such evidence included evidence of their direct participation in the Internal Affairs process, their direct participation in homicide investigations, their decisions not to discipline, supervise or provide remedial training to Dudkiewicz, and their extensive degree of involvement in the running of the Richmond Police Department.

■ Additionally, defendants have waived any objections to the jury's verdict imposing individual liability on Garfield and Clements because the Court decided to utilize the defendants' proposed verdict form, which did not require a separate determination of individual, versus supervisorial, liability of these two defendants.

Accordingly, defendants' motion for judgment notwithstanding the verdict as to the individual liability of Garfield and Clements is without merit. There was substantial evidence supporting their liability in both their supervisorial, and individual, capacities.

*D. The Verdicts Generally*

Apparently as a "catch-all," defendants contend that they are at least entitled to a new trial because the verdicts are against the weight of the evidence. Defendants assert that "[p]laintiffs did not adequately address the reality of the situations faced by the officers" in each incident. Defendants claim further that the officers were told in each instance that the decedent was armed and dangerous, and because each decedent appeared to threaten immediate bodily harm to the officers, the officers' responses in shooting the decedents were reasonable. Again, defendants are merely arguing the evidence. Evidence was introduced by both sides as to the "reality" of the situations which were presented to the officers and the reasonableness of their reactions to those situations. The jury chose to believe the evidence that the officers'

shootings were not reasonable under the circumstances, and there was substantial evidence in support of the jury's conclusion.

Defendants assert that there was insufficient evidence that there was any custom directing or authorizing the "killing of citizens." Not only do defendants again incorrectly state the burden on plaintiffs in this case, they again argue the evidence. There was substantial evidence presented at trial that there was a custom encouraging, approving, and ignoring the use of excessive force by police officers in Richmond.

Defendants contend that the evidence does not support the conclusion that any policy or custom caused the deaths or that any remediable act would have prevented the deaths. As discussed earlier, there was substantial evidence that the custom and practice of brutality caused the deaths of Roman and Guillory, and that remedial measures could have prevented the deaths.

## II. LIABILITY INSTRUCTIONS

### A. "Right to Life" Instruction

The Court instructed the jury that "[t]he right to life is a right secured by the Fourteenth Amendment to the United States Constitution." Defendants contend that this instruction was error because the right protected by the Fourteenth Amendment is "not to be deprived of life without due process of law."

Defendants proposed this instruction, therefore they cannot now object to it. Defendants' KK.

■ Additionally, the right to life *is* secured by the Fourteenth Amendment; it is secured by preventing its deprivation without due process of law. Thus, the instruction is not inaccurate.

Defendants also object to the second, and final, sentence of the instruction, which states: "[a] person killed by a police officer is deprived of a right 'secured by the Constitution or laws of the United States,' within the meaning of Section 1983." This instruction certainly may imply that a mere killing is sufficient to show a violation of section 1983, absent a valid defense. The Court was curious that defendants proposed

the instruction. But since they did propose it, they cannot complain that it was given. And as discussed in Section II, B, *infra,* the instruction was not incorrect.

### B. Allocation of Burden of Proof

■ The jury was instructed that to find a violation of constitutional rights, it must be shown "that police officers, while acting under color of state law, deprived decedents of their right to life as guaranteed by the United States Constitution. The officers have the burden of justifying the use of deadly force, and this burden of proof never leaves them." As noted, the jury could find a deprivation of the right to life where a person is killed by a police officer. These were the only two instructions pertaining to plaintiffs' burden of proof (except instructions telling the jury that defendants did act under color of state law). The next instructions dealt with the defense of reasonableness (*i.e.,* good faith immunity) in the use of deadly force, upon which the jury was instructed that defendants bore the burden of proof.

Defendants do not contest that they bear the burden of proof on their good faith immunity defense. Defendants do contend that a step in plaintiffs' burden of proof was left out, which had the effect of imposing an improperly heavy burden of proof upon defendants. Specifically, defendants assert that plaintiffs must prove to the satisfaction of the jury that defendants' acts were unlawful. Only if such a finding of unlawfulness is made does the consideration of the good faith immunity become relevant.

The plaintiff has the burden of proving: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The Court's instructions so instructed the jury. However, the instruction permitted the jury to find a deprivation of rights secured by the Constitution by the

mere finding that there was a killing. There was no requirement that there be proof that the killing was unlawful.

But what is "unlawful?" According to defendants, lawfulness is the use of appropriate force, (Defendants' Opening Brief, p. 23), therefore unlawfulness must be the use of inappropriate force. Defendants further define lawful force as "when the actor reasonably believes that such force is necessary to protect himself or another from imminent death or great bodily injury." *Id.* As noted by defendants in a footnote, (*Id.,* n. 4), this is the same standard used in determining the applicability of good faith immunity to a use of force. Therefore, if the Court were to impose the extra step of making a finding of unlawfulness, as defendants propose, the question of immunity in an excessive force case would never arise. Plaintiffs would bear the burden on the entire case, and defendants would never bear any burden of persuasion.

The question, then, is where should the burden lie. Good faith immunity is an affirmative defense, *Gilker v. Baker,* 576 F.2d 245 (9th Cir.1978), and as such the party asserting it as a defense has the burden of proving it. Defendants recognized this when they proposed instruction LL, which stated that "[t]he defendants have the burden of proving that the officers reasonably believed that the use of force was (1) justified and (2) not excessive." This identity of standards for "unlawfulness" and the good faith immunity have caused "murkiness" in the courts in excessive force cases. *Guyton v. Phillips,* 532 F.Supp. 1154, 1159 (N.D.Cal. 1981). In what is apparently the only case to confront this problem directly, Judge Patel in *Guyton* held that the only "rational allocation of proof" is to require the plaintiff to prove that he was knowingly and intentionally subjected to acts of force causing injury, and that the act of force was done under color of state law. *Id.* Once such is shown by the plaintiff, the burden of going forward with the proof then shifts to the defendant to prove that the acts of force were justified, *i.e.,* were taken because of a reasonable belief that

the conduct was lawful. *Id.* at 1160. Judge Patel continued:

> To hold otherwise would require that the plaintiff assume the responsibility of proving a part of the defendants' affirmative defense, for, in proving that the force was excessive, plaintiff would be called upon to show that the defendants used more force than was necessary or lawful to effect the arrest. Essentially this would relieve the defendants of establishing in the first instance that the force that was used was reasonable or necessary. *Id.*

The result in *Guyton* is the better result in excessive force cases. The fact of a shooting, in particular, draws immediately into question the appropriateness of the force used. As the circumstances under which the force was used are largely known only to the police officer participants, especially where there are no other percipient witnesses to the shooting as in the present cases, it would be unfair to place the burden upon the plaintiffs to establish as part of their prima facie case that the use of force was not justified.

Based upon the above considerations, and under the authority of *Guyton,* the Court's instructions which do not require plaintiffs to prove an unlawful killing, and which do require defendants to prove the good faith defense, are proper.

Even if the above conclusion is erroneous, because the standards for determining "unlawfulness" and good faith immunity are identical, and because the jury found against the immunity, the jury would also have found unlawfulness. Therefore, any error was harmless.

Finally, and importantly, defendants failed to propose instructions that would have told the jury that plaintiffs had to prove an unlawful act on the part of plaintiffs.

## III. CITY AND SUPERVISOR LIABILITY INSTRUCTIONS

### A. The City

 The instruction governing municipal liability given by the Court reads:

Where a police officer violates an individual's constitutional rights, the city that employs the officer is not liable for the constitutional violation merely because of the fact that it employed the officer. However, there are circumstances under which the city may be liable as a result of the officer's unconstitutional actions. I will now instruct you as to those circumstances.

A city may be liable for a violation of a citizen's constitutional rights caused by its police officer where a policy statement, ordinance, regulation or decision officially adopted and promulgated by the city's supervisory officials is responsible for the officer's constitutional violation. Supervisory officials include top-ranking police officials.

A municipality may be liable for a constitutional violation of its police officer where the violation is caused pursuant to a policy or custom of city supervisory officials. This policy or custom need not have been formally approved, and can be inferred from acts or omissions of the city's supervisory officials. An informal custom or policy can be inferred from acts of authorization, approval or encouragement by supervisory officials. An informal custom or policy can also be inferred from the failure of supervisory officials to remedy a specific situation, of which they knew or should have known in the exercise of reasonable diligence, the continuation of which causes a deprivation of constitutional rights.

A municipality may be liable for a constitutional violation of its police officer as a result of its deliberate indifference. Where supervisory officials knew or should have known in the exercise of reasonable diligence of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference to, or tacit authorization of, the offensive acts. Deliberate indifference may also be inferred from a failure to properly or adequately select, supervise, or discipline the subordinate police officers, where such failure is sufficiently severe to reach the level of gross negligence or deliberate indifference to the deprivation of constitutional rights of others.

Showing that individual officers violated a person's constitutional rights on an isolated occasion is not enough by itself to show that adequate supervisory procedures were not provided.

Defendants first object to the portion of the instruction that states that municipal liability can be premised upon an informal custom, and that the custom can be inferred from the failure of supervisory officials to remedy a specific situation. Defendants assert that this language permits an inference of a custom based upon negligent acts, and that municipal liability cannot be based upon mere negligence. Rather, a high degree of culpability must be shown. *Spriggs v. City of Chicago*, 523 F.Supp. 138, 142 (N.D.Ill.1981).

The wording of the instruction does require a finding of a high degree of culpability, and does not require a finding of only simple negligence. Thus, the instruction adequately sets forth the basis for finding municipal liability. This conclusion is especially compelling as there was overwhelming evidence of a high degree of culpability as opposed to mere negligence.

Defendants also assert that the phrase "specific situation", without definition, makes the instruction erroneous. The term certainly does not add any vagueness to the instruction, and in the context of all of the instructions, it is clear that the phrase refers to specific instances of acts of brutality.

Next, defendants contend that the instruction erred in stating that liability could be based upon deliberate indifference without informing the jury that the indifference had to evidence a custom of the city that caused the decedent's death. This contention is without merit because the language of the instruction following that reference makes it clear that the indifference must be

as to a pattern of constitutionally offensive acts. Thus, a custom is implied.

Defendants also assert that the instruction is erroneous because it does not define deliberate indifference. Such a definition does not seem to be required. Besides, defendants' proposed instruction MM, rejected by the Court, used the term deliberate indifference as a basis for liability, but did not define the term. Nor did defendants seek to define this term in any of its other proposed instructions. Defendants therefore have no basis for complaint.

■ Defendants assert that the instruction was erroneous because it did not define "constitutionally offensive." This phrase would not seem to require definition in light of earlier instructions given by the Court regarding the violations redressable under 42 U.S.C. section 1983. Additionally, in the context of the instruction, the jury would not assume that a violation unrelated to the violations being alleged in the case were relevant. Besides, in this case the evidence of violations pertained only to excessive force, and not to other types of constitutional violations.

Defendants' contention that the instruction is internally inconsistent is without merit.

■ Defendants contend that the instruction fails to take into consideration efforts to take remedial steps. The instruction does not include, nor exclude, the consideration of remedial steps. Thus, the instruction is not erroneous.

■ Lastly, defendants contend that the deliberate indifference portion of this instruction includes no causation provision. The instruction makes it clear that any policy or custom of any kind, of which deliberate indifference is one, must have caused the constitutional violation. Additionally, in the second instruction given after the municipal liability instruction the proximate cause requirement is made clear. (Plaintiffs' 6 as modified by the Court.)

**B. The Supervisory Officials**

As to the Court's instruction pertaining to the official liability of the supervisory officials, defendants make identical arguments to the municipal liability instruction: deliberate indifference must relate to a custom, there is no definition of deliberate indifference, there is a failure to take account of remedial action, no definition of "constitutionally offensive" is provided, and no causation requirement is set forth. For the identical reasons stated in the discussion of the municipal liability instruction, defendants' contentions are without merit.

As to the Court's instruction pertaining to the individual liability of supervisory officials, defendants contend that the instruction fails to define causation, though the requirement of causation is met. In their proposed instruction defendants used the same language, causal connection or affirmative link (see instructions MM, NN), but no proposed definition was tendered. Thus, defendants have no reason to complain. Additionally, there is no reason why a failure to define proximate cause would render the jury's verdict erroneous.

Defendants assert it was error not to give their proposed proximate cause instruction. Actually, defendants' instructions on proximate cause were merely a sentence which followed each of their instructions on municipal and supervisory liability. (Instructions MM, NN.) The instructions of the Court, (plaintiffs' 7, 8, and 6 as modified and retyped as the Court's instruction) more than adequately took care of the proximate cause requirement.

■ Lastly, defendants contend that the Court erred in instructing the jury that city officials have a duty to protect citizens against violations of their constitutional rights. Though there are contrary authorities, the better view is that expressed by the court in *Brandon v. Allen,* 516 F.Supp. 1355 (W.D.Tenn.1981). In that case the court found that a supervisory police official was constitutionally liable for a failure to become informed of one of his officer's dangerous propensities. *Id.* at 1360. The court stated that "[o]fficials of the police

department must become informed of the presence in the Department of officers who pose a threat of danger to the safety of the community." *Id.* Thus, the Court properly instructed a duty to protect. *See also, Sager v. City of Woodland Park,* 543 F.Supp. 282, 298 (D.Col.1982). Notwithstanding, this instruction was merely cumulative of the municipal and supervisorial instructions.

## IV. DAMAGES WERE EXCESSIVE

■ Defendants contend that they are entitled to a new trial because the damages awards were excessive. Defendants assert that the excessive awards were caused by passion and prejudice resulting from the jury hearing evidence of unrelated incidents, and were without evidentiary support.

There was sufficient evidence to support the jury's damages award. The prior incidents have relevance to the deterrence figure as they indicate how much defendants need to be deterred.

## V. CONSOLIDATION

■ Defendants repeat their claim, that they have made twice before in opposition to plaintiffs' motion to consolidate and in support of their motion to reconsider the Court's consolidation order, that consolidation of the cases, and failure to separate for trial evidence of the liability of the individuals from evidence of the liability of the supervisors and city, prejudiced their trial. Defendants seek a new trial for the alleged errors.

Despite defendants' unsupported conclusion, judicial economy was clearly served by consolidation of these actions. Having completed the trial the Court confirms the correctness of its observations made in earlier orders.

Additionally, because the custom or policy, as defendants have so adamantly asserted in these motions, must *cause* the constitutional violation, there was no error in showing how these customs and policies led up to the ultimate deprivations of life. These customs and policies also pertain to the reasonableness of the actions taken by the officers involved in the deprivations.

The Court confirms its earlier orders regarding consolidation and bifurcation.

## VI. ASSORTED EVIDENTIARY ERRORS

■ Defendants contend that the Court erred in excluding evidence of the PCP expert who would testify that Guillory, while under the influence of PCP, might have thought that he was drawing a gun. The Court now confirms its previous order precluding this evidence, which was purely speculative and whose prejudicial value outweighed any remote probative value, especially in light of the fact that the jury was informed that Guillory had PCP in his body at the time of his death.

Defendants contend that the Court erred in refusing cross-examination of plaintiffs' police officer witnesses as to citizens' complaints. The Court did not refuse such cross-examination.

■ Defendants contend that the Court erred in not permitting them to present evidence from a citizen body and fender expert that Roman's car had not been tampered with. The Court found this evidence to be cumulative, unnecessary and a waste of judicial time in light of the police expert's conclusive testimony that the car had not been tampered with. This evidence was sufficient to take the question of tampering out of the minds of the jury without the need for further, cumulative evidence.

To the extent the Court has not addressed any contentions made by defendants, those contentions are denied as not meritorious.

Good cause appearing therefor, IT IS HEREBY ORDERED that defendants' motions for judgment notwithstanding the verdicts, for new trial, and for reduction of damages awards, are DENIED.